Sophia **SHORE,** Plaintiff–Appellant, Cross–Appellee,

v.

**FEDERAL EXPRESS CORPORATION,** Defendant–Appellee, Cross– Appellant.

Nos. 93–5548, 93–5693.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1994.

Decided Dec. 19, 1994.

James F. Schaeffer (argued and briefed), Cordova, TN, for Sophia Shore.

Connie L. Lensing (argued and briefed), Federal Exp. Corp., Memphis, TN, for Federal Exp. Corp.

Before: JONES and BATCHELDER, Circuit Judges; and JOINER, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

In this Title VII case, which is now before us for the *third* time, the parties dispute the amount of Plaintiff's front pay award. We affirm in part and reverse in part, and remand for further proceedings.

## I.

Detailed descriptions of the underlying facts of this case are set forth in *Shore v. Federal Express,* 589 F.Supp. 662, 663–66 (W.D.Tenn.1984), and in *Shore v. Federal Express,* 777 F.2d 1155, 1156 (6th Cir.1985), and need not be repeated here. For present purposes, it suffices to note that, in June 1980, Defendant–Appellee, Cross–Appellant Federal Express Corporation unlawfully discriminated against Plaintiff–Appellant, Cross–Appellee Sophia Shore by firing her from her job as "MBO Analyst," [1] a position for which she could not have qualified based solely upon her formal training and education, but in which she nevertheless excelled.

In 1981, Shore initiated the present suit under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The district court found this to be a "classic case of disparate treatment based on sex," and awarded Shore back pay, interest, and attorney fees. *Shore,* 589 F.Supp. at 667–68. Furthermore, "because of the hostility of defendant toward plaintiff," the court found that reinstatement would be inappropriate. *Id.* at 668. In lieu of reinstatement, the court awarded five years of front pay. *Id.*

---

[*] The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]. "MBO" stands for "Management By Objectives," a modern and innovative personnel program.

On appeal, we affirmed all but the front pay portion of the district court's award. We held, first, that "intentional discrimination exists in this case." *Shore*, 777 F.2d at 1157. Second, we rejected Federal Express's argument that Shore's refusal to accept alternative jobs offered by Federal Express constituted a "failure to mitigate damages" because we found that the alternative jobs were not comparable. *Id.* at 1157–58. Finally, we found that the lower court failed to indicate the basis for cutting off the front pay award after five years. We explained that while determination of the cut-off date was within the discretion of the trial court, there should be some indication of how the court calculated the amount of the award. Accordingly, we remanded for further findings on the issue of front pay. *Id.* at 1160.

On remand, the district court stressed that "[t]he job of MBO Analyst from which [Shore] was fired was the best job she could have based upon her experience and formal education," and that it was "extremely unlikely" that Shore would ever find an employment opportunity comparable to this "unique" position. J.A. at 52, 55 (Further Findings and Conclusions on Remand, August 28, 1986). The court noted that Shore was then working as a secretary, *id.* at 54, and held that Shore should receive as front pay "the difference between what she has earned since the earlier judgment and will earn and what she would have earned as the MBO Analyst of the defendant company until she is sixty-five years old, an appropriate end of her work expectancy." *Id.* at 52–53. The court further held that Shore was not entitled to normal employee benefits from Federal Express during her period of front pay. Rather, the court expected Shore to pay for her own "benefits" even if doing so may cost more. *Id.* at 53.

After a series of delays, the court's judgment awarding front pay was finally entered on June 9, 1988. On May 11, 1989, we affirmed "upon the reasoning set forth" by the district court. Federal Express's petition for rehearing *en banc* was subsequently denied.

Meanwhile, a few days after the entry of the June 1988 judgment, Shore quit her job as a legal secretary at the firm of Udelsohn, Blaylock & Marlow, where she had been working for approximately five years. She later testified that she quit because of an oppressive workload and in order to enable her to apply for a position more comparable to her former MBO Analyst job. However, the record indicates that she was required only to work a normal work day, received a 1 hour lunch break, typically left work at 5 p.m., and was only asked to work overtime twice. The record also shows that she was very active in her search for a better job while she was working as a secretary.

From June to August 1988, Shore sent out 36 letters seeking employment and received 11 interviews. On September 1, 1988, she accepted a job as an administrative assistant with VHA Long Term Care. However, she soon discovered that the job was menial and mundane, and she quit two months later. She decided that she would never again accept employment as a secretary, nor would she work in what she regarded as a menial capacity. Except for a few assignments as a temporary worker with Manpower of Shelby County, she remained unemployed from November 1988 to January 1990. She sent out 15 letters in November 1988, 8 letters in December, 8 again in January 1989, 2 in April, and 14 in July. Except for one letter sent in October 1989, she sent no more letters for the next two years.

From February 1990 to June 1991, Shore invested her back-pay award into a dance studio in partnership with Frank Holeman, an experienced dance instructor. Holeman was in bankruptcy at the time, and Shore was the sole investor. Neither Shore nor Holeman had any experience in business akin to operating a dance studio, and the record suggests that Holeman was exploiting Shore. J.A. at 164–67 (Tr. transcript of Shore's testimony). The venture never made any profit.

In October 1990, Federal Express moved to terminate Shore's front pay award, arguing that Shore had failed to mitigate damages. Shore denied that she had failed to mitigate, and asserted instead that Federal Express should pay her the full difference between what she would have earned as an

MBO analyst and the minimal amount she actually earned.

In July 1991, Shore sent out one letter seeking employment. She sent no more letters in 1991, but she sent 2 letters in January, 6 in February, and three in May, 1992. As of that time, she had not updated her resume since 1988. In June 1992, the court held a hearing on the question of whether to terminate the front pay award. At that time, Shore was training to qualify for a job with a casino in Mississippi.[2]

In February 1993, the court issued a "Ruling on Front Pay and Interest Due the Plaintiff for a Portion of 1988 through June 30, 1992." J.A. at 23–45. In this ruling, the court rejected both parties' theories. The court explained that, under Sixth Circuit precedent regarding front pay, a claimant's duty is "to look for and accept employment substantially equivalent to that from which she was discriminatorily fired." J.A. at 30 (citing *Ford v. Nicks,* 866 F.2d 865 (6th Cir.1989)). However, because the MBO Analyst job was unique and it would be "extremely unlikely" that Shore could obtain an equivalent job, the court found that Shore's duty to mitigate was limited. *Id.* at 31. The court held that Shore's position as a legal secretary represented "satisfactory mitigation," and that Shore had acted unreasonably in leaving this job, and in subsequently leaving the VHA administrative assistant job. Further, the court held that Shore's dance studio venture was also unreasonable. Therefore, the court concluded, her loss of earnings from 1988 to June 1992 was her responsibility, and Federal Express was not liable for it.

However, the court also rejected Federal Express's contention that Shore's decision not to seek further employment as a secretary, and her subsequent efforts at finding a position comparable to her MBO Analyst job, were unreasonable. Consequently, the court held that Federal Express continued to be liable for the difference between what she would have made as an MBO Analyst at Federal Express, and what she would have

made as a legal secretary at Udelsohn, Blaylock & Marlow.

The court further held, *inter alia,* that Shore was not entitled to prejudgment interest insofar as she and her attorneys shared some, but not all, of the responsibility for the various delays in reaching a judgment. Finally, with regard to attorney fees, the court held that Shore was entitled to recover only 50% of the fees charged by her then-current attorney.

The court's ruling was reduced to judgment in March 1993, which was subsequently corrected in April 1993. This appeal followed.

**II.**

On appeal, Shore contends the following: (1) she is entitled to front pay during the relevant period of the *full* difference between what she would have made as MBO Analyst at Federal Express and what she *actually* earned; (2) her front pay award should include pension benefits; (3) the lower court erred in denying prejudgment interest; and (4) it erred by declining to award her 100% of her attorney fees. On cross-appeal, Federal Express contends that its liability for front pay should have ceased when Shore unreasonably left her position at Udelsohn, Blaylock & Marlow, and that the court should not have awarded Shore any attorney fees with regard to the June 1992 proceedings or thereafter.

**A. Duty to Mitigate Front Pay**

■ Upon a finding of invidious discrimination in violation of Title VII, a district court has "wide discretion" with regard to imposing equitable remedies so as "to fashion the most complete relief possible" designed to "make the victims of unlawful discrimination whole." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (quoting 118 Cong.Rec. 7168 (1972)). Consequently, an appellate court reviews a lower court's imposition of equitable remedies in a Title VII case for

---

2. In Shore's brief and at oral argument, Shore's attorney stated that Shore subsequently accepted a position with the casino as a dealer, but the record does not indicate what month she started work nor how much money she is or was making there.

abuse of discretion. *Id.* at 424, 95 S.Ct. at 2374–75. The *Albemarle Paper* Court stressed, however, that a district court abuses its discretion if it loses sight of the two "large objectives of the Act": (1) "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of . . . employees," and (2) to make whole the victims of unlawful employment discrimination. *Id.* at 417–18, 95 S.Ct. at 2371–72.

■ The Court also acknowledged that "equity eschews mechanical rules and depends on flexibility." *Id.* at 417, 95 S.Ct. at 2371 (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946)). Similarly, we have long held that "because future damages are often speculative," flexibility and wide discretion are especially important when a court's remedies for a Title VII violation include front pay. *Fite v. First Tennessee Production Credit Ass'n,* 861 F.2d 884, 893 (6th Cir.1988) (quoting *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir.1985)); *Shore,* 777 F.2d at 1159.

42 U.S.C. § 2000e–5(g) provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." The Supreme Court has found that this provision codifies:

> an ancient principle of law [that] requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied.

*Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982). *See also Ford v. Nicks,* 866 F.2d 865, 873 (6th Cir.1989) ("An employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so.") (citing *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984)).

■ In *Ford* and *Rasimas,* we stressed that the term "substantially equivalent," as used in the Supreme Court's *Ford Motor Co.* case, entails "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." 866 F.2d at 873 (quoting *Rasimas,* 714 F.2d at 624).

■ These considerations from *Ford Motor Co., Ford,* and *Rasimas* apply to the award of front pay in the same manner as they do to the award of back pay. *See Fite,* 861 F.2d at 892; *Shore,* 777 F.2d at 1158–59. Just as back pay is compensation for the period between an act of unlawful discrimination and the date of judgment, so front pay is "simply compensation for the post-judgment effects of past discrimination." *Shore,* 777 F.2d at 1158.

■ In the present case, the lower court was confronted with the task of fashioning an equitable remedy that, on the one hand, imposed upon Shore a duty to mitigate her front pay award in accordance with § 2000e–5(g), yet on the other hand accounted for the fact that it was extremely unlikely that Shore would ever find substantially equivalent employment. The court elegantly met this challenge by finding that Shore's job as a legal secretary was "satisfactory mitigation." J.A. at 31. This implied that Shore had no duty to spend time seeking comparable employment that probably was non-existent, and that Federal Express was under no obligation to pay Shore's full salary while Shore searched for a job she would probably never find. J.A. at 37. In other words, Shore's duty to mitigate was built into the court's remedy, thereby offsetting Federal Express's burden of paying front pay even in the absence of substantially equivalent employment opportunities.[3]

---

**3.** As of the district court's 1986 ruling, the court apparently did not recognize this implication of its own award. The court stated that "the defendant will pay to [Shore] the amount of gross earnings she could have received if she had been employed as an MBO Analyst for the defendant less the amount of the gross earnings she *actually* received." J.A. at 53 (emphasis added). In

Both parties fail to recognize the nature of the lower court's ingenious compromise. Shore argues that she has worked long and hard, and endured great hardship, all in order to fulfill her duty to mitigate. Federal Express argues that Shore's efforts have been so sporadic and irresponsible that she has utterly failed to fulfill her duty to mitigate. In fact, because the duty to mitigate was already built into the court's remedy, Shore's effort, or lack of effort, expended in trying to find substantially equivalent work is irrelevant. Consequently, the arguments of both Shore and Federal Express fail.

Federal Express is no more entitled to a windfall on account of Shore's failure to work as a secretary than Shore is entitled to have Federal Express make up the shortfall between her actual income and what she would have made as a secretary. In short, the court's front pay award constitutes an equitable compromise made well within the bounds of its discretion.

## B. Pension Benefits

■ Shore contends for the first time on appeal that she is entitled to pension benefits as part of her front pay award. Back in 1986, the lower court held that:

> plaintiff is not to be entitled to normal employee benefits from the defendant during her period of front pay. It is contemplated that the plaintiff will provide the equivalent benefits from the gross pay differential even if acquiring the benefits from other sources costs more.

J.A. at 53. We affirmed this holding in 1989. This is now the law of the case. "Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990)

(citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988)). With regard to our own prior decision, we have some discretion to decide not to apply the law of the case doctrine, *id.,* but in the present case, there is no reason to revisit the issue, especially in light of Shore's failure to preserve it.

## C. Pre-judgment Interest

The trial court had, at one time, stated that interest on Shore's front pay award would begin to accrue as of the date of the hearing in June 1992. It turned out, however, that judgment on the issues raised in the hearing was not entered until March 31, 1993. Although the delay between hearing and judgment was significantly longer than the court had anticipated in its initial ruling, the court found that both parties and the court shared responsibility for substantial portions of the long delay. Consequently, the court held that no recovery for prejudgment interest would be granted. J.A. at 40–41.

Shore asserts that "in the interest of fairness" she should receive pre-judgment interest for the portion of the delays that the Defendant and the court caused. Only the portion attributable to her own delay should be excluded. Shore Br. at 49. Shore cites no authority in support of this claim.

■ Federal Express argues preliminarily that Shore waived this issue by failing to cite any legal authority in support of her claim. This argument is without merit. While we agree that Shore's brief suffers from its lack of citations to authority, Shore's fairness argument satisfies Rule 28(a)(4) of the Federal Rules of Appellate Procedure (not requiring citations to authorities). Accordingly, we will consider her claim.

1993, however, construing its 1986 ruling with the benefit of hindsight, the court indicated that it intended Shore's job as legal secretary to serve as an *abstract measure* of "the highest-paying job she could obtain for purposes of calculating" the front pay award. J.A. at 37; *id.* at 31 ("the measure [of front pay] was the salary she would have earned as an MBO Analyst less the amount she was earning as a secretary.").

Yet even in its 1993 ruling, the court still referred to Shore's continuing responsibility to

"meet the minimal mitigation of damages requirement for periodically attempting to obtain a better job than the legal secretary," and referred to Shore's irresponsible behavior as an unreasonable "failure to mitigate." *Id.* at 36–37. Nevertheless, the unavoidable implication of its 1993 ruling is that the duty to mitigate was built into the court's front pay order. Accordingly, Shore bears no further continuing responsibility to obtain a better job.

Federal Express also contends that all of the delays are attributable to Shore, and none are attributable to Federal Express. This contention is clearly inconsistent with the district court's finding that both parties were responsible for some of the delays. Federal Express also states that it should not be penalized for any delays attributable to the court.

"A district court's award of prejudgment interest is reviewed for an abuse of discretion." *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 841 (6th Cir.1994) (citing *United States v. Crescent Amusement Co.,* 323 U.S. 173, 185, 65 S.Ct. 254, 260, 89 L.Ed. 160 (1944)). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152, 156–57 (6th Cir.1988).

In the context of back pay awards, another panel of this court recently explained that:

> An award of prejudgment interest is an element of complete compensation in a Title VII back pay award. Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred. This court commonly awards prejudgment interest on back pay awards.

*Wilson,* 24 F.3d at 841–42 (citing *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988); *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987); *EEOC v. Wooster Brush Co.,* 727 F.2d 566, 578 (6th Cir.1984)). *See also Tiemeyer v. Community Mutual Ins. Co.,* 8 F.3d 1094, 1102 (6th Cir.1993) ("Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award.") (quoting *Drennan v. General Motors Corp.,* 977 F.2d 246, 253 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994).

The *Wilson* panel further stated that "an employer who violated Title VII is not entitled to an interest free loan as to relief awarded," and that "victims of discrimination should not be penalized for putative delays in the administrative or judicial process." 24 F.3d at 842. However, because the plaintiff in *Wilson,* the EEOC, spent an "inordinate amount of time," approximately four years, investigating the charges of discrimination, the panel held that the trial court abused its discretion by awarding EEOC the full amount of prejudgment interest. *Id.* Instead, the panel awarded only one-half of the accrued prejudgment interest. *Id.* As we understand *Wilson,* the panel was estimating that one-half of the time spent by EEOC was reasonable, and the other half was "inordinate."

Although *Wilson* involved back pay, and the present case involves front pay, *Wilson* nevertheless governs the present case. Under the peculiar circumstances now before us, in which the pertinent judgment on front pay was entered subsequent to the accrual of a substantial portion of front pay that is as yet unpaid, the rationale for awarding prejudgment interest on front pay is precisely the same as that described in *Wilson* for awarding such interest on back pay.

Applying *Wilson* to the present case, we hold that the lower court should have excluded prejudgment interest only for delays attributable to Shore herself. She is entitled to prejudgment interest for delays attributable both to Federal Express and to the judicial process. The court below abused its discretion by holding otherwise. Therefore, we reverse the lower court's holding that Shore should receive no prejudgment interest, and remand in order for the lower court to ascertain and clarify which periods of delay are attributable solely to Federal Express or to the court, and which are attributable to Shore. On remand, the court is to award Shore prejudgment interest for the former and not for the latter.

### D. Attorney Fees

Our standard of review on challenges to attorney fee awards was set forth in *Wool-*

*dridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990):

> This Circuit has set up a three-tier review standard for determining the reasonableness of the requested hours billed by a prevailing party. We apply a clearly erroneous standard when reviewing a district court's determination that a prevailing party has or has not worked the hours the party claims to have worked. We determine whether the District Court erred when reviewing legal questions concerning the relationship of the hours billed to the points on which the party prevailed. We look to see whether the District Court has misapplied the reasonable practices of the profession when determining whether a party used poor judgment in billing the opposing party for hours spent on the case.

In the present case, the district court ruled that Shore was the prevailing party on 50% of the June 1992 hearing, and that her then-current counsel, Richard B. Fields, should provide "an itemized listing of the time and services rendered from May 18, 1992, the date upon which he became attorney of record, through the time when all services have been rendered for the hearings in this Court; and the amount awarded shall be calculated at 50% of the total amount approved." J.A. at 45. Eventually, the court awarded Shore $5,000 in attorney fees under this formula.

With regard to the performance of Shore's counsel prior to May 18, 1992, the court mentioned that:

> [Shore] dismissed her attorney who had so exceptionally well filed and tried the case through the first appeal and remand. Her new attorney had to start over in many respects in the handling of the case. He reopened discovery.

J.A. at 25. Further, the court noted that "[s]ince [1989], there has been considerable confusion, delay, bickering and wheel-spinning in the interpretation and application of the front-pay formula." J.A. at 26.

On appeal, Shore declares that the court should have awarded her full attorney fees. She presents no argument in support of this position, however, except to state that otherwise she bears an "undue financial hardship" and that she will "be made less than whole." Shore Br. at 50.

■ Shore's declarations overlook the fact that a "prevailing party" is only entitled to recover "reasonable" attorney fees. 42 U.S.C. § 2000e–5(k). It is entirely proper for a court to reduce fees in cases of limited success, and to exclude fees deemed unreasonable. *Wooldridge*, 898 F.2d at 1173–77. To the extent Shore's attorney fees are reduced for these reasons, the hardship caused by the court's refusal to award such fees is not "undue," and she is not thereby made "less than whole."

■ Because Shore sought to receive substantially more front pay than the court awarded, and Federal Express sought to terminate front pay altogether, the district court was well within its discretion to hold that Shore only prevailed over 50% of the issues. Further, because the lower court apparently had a low opinion of the performance of Shore's attorneys from May 1989 to May 1992, it appears that the court regarded the fees accrued during this period to be unreasonable and therefore unrecoverable. It further appears that, at least to some extent, the lower court blamed Shore herself for this poor performance. In the absence of any evidence or citation to the record, the panel is obliged to defer to the lower court's judgment in this regard. Accordingly, we affirm the lower court's award of attorney fees.

## III.

In light of the foregoing, we reverse and remand the lower court's ruling on prejudgment interest, and we otherwise affirm.