45 F.3d 1017
 63 USLW 2528, 10 IER Cases 396, 18
Employee Benefits Cas. 2745,
Pens. Plan Guide P 23905M
 Diane A. SCHWARTZ, Plaintiff-Appellee,
v.
Joseph S. GREGORI, M.D.; Joseph S. Gregori, M.D., Inc.,
Individually and as Employer and Administrator of
Pension Plan and Trust, Defendants-Appellants,
John J. Kuczek and Kuczek & Associates, Inc., Defendants.
 No. 93-3964.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 29, 1994.
Decided Jan. 31, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied March
17, 1995.
 
 1
 Robert Samuel Hartford (argued and briefed), Timothy M. Reardon (briefed), Nadler, Nadler & Burdman, Youngstown, OH, for plaintiff-appellee.
 
 
 2
 Richard J. Thomas (argued and briefed), Richard N. Selby (briefed), Henderson, Covington, Stein, Donchess & Messenger, Youngstown, OH, for defendants-appellants.
 
 
 3
 Before: MILBURN and SUHRHEINRICH, Circuit Judges; and JOINER, District Judge.*
 
 
 4
 JOINER, District Judge.
 
 
 5
 Defendants Joseph S. Gregori and Joseph S. Gregori, M.D., Inc., appeal the judgment in favor of plaintiff Diane Schwartz for breach of fiduciary duty and retaliatory discharge under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001 et seq. The district court awarded Schwartz damages to compensate her for the financial losses caused by defendants' breach of fiduciary duty, together with prejudgment interest; back pay and front pay for retaliatory discharge; and attorney fees. The Gregori defendants challenge their liability for retaliatory discharge and the award of back pay and front pay. We affirm.
 
 I.
 
 6
 Joseph Gregori, a physician, and Diane Schwartz, a licensed x-ray technician, met through their employment in 1971. In 1975, Gregori started his own practice, formed Joseph S. Gregori, M.D., Inc., and hired Schwartz as his office manager and x-ray technician.
 
 
 7
 Defendant John Kuczek is a financial planner and insurance salesman, conducting business through Kuczek & Associates, Inc. Kuczek and Gregori are friends, and Kuczek performed financial planning services for Gregori. At Kuczek's suggestion, Gregori formed the Joseph S. Gregori, M.D., Inc. Employer's Pension Plan and Trust Agreement (the "plan") in 1975. Gregori individually served as trustee of the plan, and Gregori, Inc. served as administrator. Gregori, Schwartz and others were participants in the plan.
 
 
 8
 Gregori had no investment experience, and relied on Kuczek to make decisions for the plan. In 1983, Kuczek learned of a commodities investor, David Meek, whose funds supposedly were earning as much as 30 percent. Kuczek recommended to Gregori that the plan invest in Meek's funds. Gregori followed Kuczek's advice, investing $50,000 of plan assets in September 1983, and an additional $108,500 in December 1983. The latter investment was made following Kuczek's "due diligence" visit to Meek's office in Florida, where he learned that Meek's business had been in operation for only nine months.[1] Following the December investment, the amount invested in Meek's funds represented 45.6 percent of the total plan assets.
 
 
 9
 Meek issued weekly statements for a period of time which indicated that the funds were performing well. Over the next year, Gregori and Kuczek received two notices disclosing that Meek was a defendant in an action brought by the Commodities Futures Trading Commission (CFTC), and that an injunction had been issued requiring Meek to allow the CFTC to have access to the books and records of one of his funds. On both occasions, Kuczek called Meek and was assured that the problem was an inadvertent one which was being remedied. Kuczek did not confirm Meek's report with the CFTC or recommend that the plan's assets be withdrawn.
 
 
 10
 Meek stopped issuing weekly statements in July 1985, and shortly thereafter the CFTC froze all of his accounts. In 1987, Gregori and Kuczek learned that Meek had embezzled all of the invested funds, and that the weekly reports were fictitious. The parties stipulated that the total loss to the plan was $288,991.09, and that Schwartz's share of the loss was $19,728.15. Kuczek offered to make restitution to the plan for the loss, but Gregori refused the offer and "forgave" Kuczek because he had not caused the loss intentionally. The plan was terminated on March 31, 1988, and Schwartz received a lump sum payment representing her share of the plan assets then in existence. This payment did not compensate Schwartz for the losses attributable to the Meek investment.
 
 
 11
 Schwartz and Gregori had several discussions during this time period regarding the plan's losses. Gregori offered to repay the lost funds to Schwartz in the form of bonuses over a three-year period, but Schwartz refused the offer because the bonuses would have been taxable as income in the years they were received, and could not have been invested in a qualified retirement plan. Through counsel, Schwartz demanded that Gregori reimburse her for the loss and threatened legal action. Gregori responded by telling Schwartz that she would be out of a job if she sued him. Gregori also threatened to force Schwartz to quit by reducing her hours.
 
 
 12
 Schwartz filed suit on November 10, 1988, and effected service on November 14. Within days, Gregori advertised for an x-ray technician. On November 22, Gregori sent his attorney a draft letter terminating Schwartz, and asked the attorney to make necessary alterations or clarifications. Gregori terminated Schwartz on December 9, telling her that he planned to scale back his practice, implement computerization, and involve his wife in the administration of the office.
 
 
 13
 Schwartz's original complaint asserted a breach of fiduciary duty claim against Gregori, Inc. only. Through amendment, Schwartz added a similar claim against the Kuczek defendants and Gregori individually, and added a claim against the Gregori defendants for illegal discharge, seeking back pay, reinstatement or front pay in lieu thereof, and damages for emotional distress.
 
 
 14
 The case was tried to the court. Extensive testimony was introduced on the breach of fiduciary duty claim, on which the district court found all four defendants jointly and severally liable, awarding Schwartz $19,728.15 together with prejudgment interest. With respect to the retaliatory discharge claim, Schwartz established that the reasons Gregori had given to justify her termination had not materialized; i.e., Gregori did not scale down his practice, did not computerize his office for three years, and involved his wife in the office for only a short time following Schwartz's discharge. Gregori testified at trial to additional reasons for Schwartz's termination, alleging incompetence, failure to perform duties, and failure to communicate and show initiative. The district court found that all of stated reasons were pretextual, and that Gregori's real reason for discharging Schwartz was her lawsuit to enforce her rights under the plan. Accordingly, the court found that the Gregori defendants retaliated against Schwartz in violation of ERISA. The court denied Schwartz emotional distress damages, and found that reinstatement was not a feasible remedy in light of the hostility between the parties. The court awarded back pay of $59,764, and front pay of $42,443. Finally, the court awarded Schwartz attorney fees of $33,253 for services rendered through the date of judgment.
 
 II.
 
 15
 The scope of this appeal has been narrowed considerably since it was first filed,[2] and the remaining issues concern Schwartz's claim of retaliatory discharge. An employee's rights under ERISA are set forth in Sec. 510, 29 U.S.C. Sec. 1140:
 
 
 16
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. Sec. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.
 
 
 17
 (Emphasis added.) The provision governing the relief available under ERISA is Sec. 502, 29 U.S.C. Sec. 1132(a), which provides in pertinent part:
 
 
 18
 A civil action may be brought--
 
 
 19
 ....
 
 
 20
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]
 
 
 21
 Gregori's challenges to liability for retaliatory discharge merit only brief discussion. Gregori contends that ERISA Sec. 510 does not protect employees from retaliatory acts which are not intended to affect their benefit entitlement. Under his reading of the statute, Gregori claims that he is not liable because the plan losses had been suffered long before Schwartz's discharge. Gregori relies on Humphreys v. Bellaire Corp., 966 F.2d 1037 (6th Cir.1992); and Rush v. United Technologies, 930 F.2d 453 (6th Cir.1991); where this court set forth the elements of a Sec. 510 claim in the context of cases in which each plaintiff in fact claimed that he was discharged to prevent him from becoming eligible for certain plan benefits. Accordingly, this court held that intent to interfere with the attainment of a benefit was, in those cases, an element of the plaintiff's claim. However, in neither Humphreys nor Rush did the court speak to cases other than those in which the employer's adverse action was taken to prevent the attainment of plan benefits. The plain language of the statute creates a cause of action based on an employer's retaliation for an employee's exercise of a right to which she is entitled, not just under a benefit plan, but under ERISA itself. Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir.1992); Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 881 (9th Cir.1989), cert. denied, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990). Simply put, intent to interfere with the attainment of benefits under a plan is not an element of a retaliation claim such as that made by Schwartz.
 
 
 22
 Gregori also challenges the district court's factual finding that Schwartz was discharged because she filed suit, contending that he rebutted Schwartz's prima facie case by proving that her discharge was motivated by legitimate, work-related reasons. We review the court's finding for clear error and find none. The district court was entitled to disbelieve Gregori's stated reasons for the discharge, particularly in light of the facts that: (1) Gregori threatened to fire Schwartz if she filed suit; (2) the reasons given to Schwartz at the time of her discharge were proven to be untrue; and (3) the reasons advanced at trial differed from those given to Schwartz at the time of her discharge. St. Mary's Honor Center v. Hicks, --- U.S. ----, ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). In sum, we are presented with no basis on which to disturb the finding of liability for retaliatory discharge.
 
 
 23
 We turn, then, to the relief available to a person who has been discharged in retaliation for exercising a right protected by ERISA. This court previously has approved back pay awards for violations of ERISA Sec. 510,[3] a fact that ordinarily would be dispositive of whether that particular remedy is available. However, Gregori challenges the availability of back pay and front pay on the authority of an intervening Supreme Court decision, requiring that we address the issue in this light.
 
 
 24
 In Mertens v. Hewitt Associates, --- U.S. ----, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Court held that a nonfiduciary who knowingly participates in a fiduciary's breach of a duty imposed by ERISA is not liable for the resulting losses suffered by the employee benefit plan. The plaintiffs in Mertens brought suit under ERISA Sec. 502(a)(3), which, as noted, permits plan participants to file a civil action for "appropriate equitable relief." Categorizing the relief sought by the plaintiffs as compensatory damages, "the classic form of legal relief," the Court held that such damages were precluded by Sec. 502(a)(3). Id. at ----, 113 S.Ct. at 2068 (emphasis in original; citations omitted).
 
 
 25
 The term "equitable relief" can assuredly mean ... whatever relief a court of equity is empowered to provide in the particular case at issue. But ... "equitable relief" can also refer to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).
 
 
 26
 Id. at ---- - ----, 113 S.Ct. at 2068-69 (emphasis in original). The question in light of Mertens, then, is whether back pay and front pay are equitable or legal remedies.
 
 
 27
 The parties draw no distinction between front pay and back pay in advancing their competing positions. We assess each remedy distinctly, focusing first on back pay. In Chauffeurs Local 391 v. Terry, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), the Court held that employees who seek relief in the form of backpay for their union's alleged breach of the duty of fair representation are entitled to a jury trial under the Seventh Amendment for the reason that they seek legal damages. The Court focused on the nature of the remedy sought in a fair representation case, money damages, " 'the traditional form of relief offered in the courts of law.' " Id. at 570, 110 S.Ct. at 1347 (citation omitted). While emphasizing that it had never held that all awards of monetary relief are necessarily legal in nature, the Court concluded that the relief sought from the union possessed no attributes justifying departure from the general rule that money damages constitute legal relief.
 
 
 28
 The Court's discussion of the attributes which justify the characterization of a money award as equitable is dispositive here. The Court stated that damages can be characterized as equitable where they are restitutionary, but rejected the proposition that the relief sought by the employees before it met this test. "The backpay ... is not money wrongfully held by the Union, but wages and benefits they would have received from [their employer] had the Union processed the employees' grievances properly. Such relief is not restitutionary." Id. at 570-71, 110 S.Ct. at 1348. In contrast, the Court distinguished Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), where it had held that district courts have the equitable power, incidental to their injunctive powers to restrain violations of the Fair Labor Standards Act, to award lost wages to compensate employees wrongfully discharged in retaliation for asserting their rights under the FLSA. Significantly, Terry characterized the back pay at issue in Mitchell as restitutionary, and stated as well that relief incidental or intertwined with injunctive relief may be considered to be equitable.[4] Terry, 494 U.S. at 571, 110 S.Ct. at 1348.
 
 
 29
 Like in Mitchell, the back pay at issue in this case was awarded against the employer rather than a third party, and thus operates to restore to the plaintiff that to which she would have enjoyed but for the employer's illegal retaliation. While restitution generally is awarded to prevent unjust enrichment to the defendant, this is not required in every case. Restatement of Restitution Sec. 1 cmt. e (1936). Nor is it necessary that restitution be made in kind, for a court may restore the plaintiff to the position he formerly occupied "either by the return of something which he formerly had or by the receipt of its equivalent in money."[5] 66 Am.Jur.2d Restitution and Implied Contracts Sec. 1 at 942 (1973). While Terry did not expound on its reasons for characterizing as restitutionary the award of back pay against an employer for retaliatory discharge, these principles fully support its conclusion. As recognized by Mertens, restitution is a remedy typically available in equity, and falls within Sec. 502(a)(3)'s category of "appropriate equitable relief." In light of Mitchell, Terry, and, ultimately, Mertens, we conclude that the back pay awarded here constituted restitution, and therefore is an equitable remedy available under Sec. 502(a)(3).
 
 
 30
 The question of front pay is more straightforward. In other contexts, this court has characterized front pay as an equitable remedy. E.g., Shore v. Federal Express Corp., 42 F.3d 373 (6th Cir.1994) (front pay under Title VII, 42 U.S.C. Sec. 2000e-5(g), authorizing "equitable relief"); Roush v. KFC Nat'l Management Co., 10 F.3d 392, 398 (6th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994) (action under Age Discrimination in Employment Act, 29 U.S.C. Sec. 626(c)(1), authorizing legal or equitable relief; front pay characterized as equitable). Front pay is awarded only when the preferred remedy of reinstatement, indisputably an equitable remedy, is not appropriate or feasible. Like the remedy of reinstatement, the availability of front pay is committed to the discretion of the trial court, and review of its decision is for abuse of discretion. Shore, 42 F.3d at 377-78; Roush, 10 F.3d at 398. We are presented with no basis or reason for departing from this court's historical assessment of the nature of front pay, and conclude that it is an equitable remedy and consequently available under ERISA Sec. 502(a)(3).
 
 
 31
 The district court awarded front pay based on the difference between Schwartz's current income and that which she would have received if her employment with Gregori had continued. The period of time encompassed by the award was eight and one-half years, terminating with Gregori's sixty-fifth birthday. Schwartz's total entitlement was then reduced by half to account for the "obvious uncertainties of the future." Gregori does not challenge the court's calculations.
 
 
 32
 In determining the amount of front pay, a district court is to consider a number of factors, including the employee's work life expectancy. Shore v. Federal Express Corp., 777 F.2d 1155, 1160 (6th Cir.1985). The fact that an employee is an at-will employee, like Schwartz, alone would not justify a refusal of front pay, but can be taken into account in fashioning an appropriate remedy. See Reneau v. Wayne Griffin & Sons, Inc., 945 F.2d 869, 871 (5th Cir.1991); Andover Newton Theological Sch., Inc. v. Continental Casualty Co., 930 F.2d 89, 94 (1st Cir.1991). Here, the court effectively ordered front pay for a period of four years. This period is not challenged on appeal, and appears reasonable in light of the fact that the parties had worked together for seventeen years, thirteen as employer/employee.
 
 
 33
 We therefore AFFIRM the judgment against Gregori and Gregori, Inc., for retaliatory discharge and the award of back pay and front pay.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Kuczek also was aware that Meek was 29 years old, had only two weeks of college education, and had worked for five different employers between 1977 and 1981. Kuczek did not contact any of Meek's former employers prior to recommending the investment to Gregori
 
 
 [2]
 Pursuant to the parties' stipulation, this court dismissed the Kuczek defendants' appeal and Schwartz's cross-appeal. The Gregori defendants report that Schwartz's settlement with the Kuczek defendants has resolved the damage award for breach of fiduciary duty as well as district court's award of attorney fees. The Gregori defendants expressly have abandoned their challenge to the court's determination of the amount of the plan loss attributable to Schwartz and the award of prejudgment interest. They suggest that their challenges to the court's findings of breach of fiduciary duty and causation remain viable for preserving their right to seek attorney fees on appeal. The Gregori defendants have made no request for fees to date. We note, moreover, that the Gregori defendants' liability for breach of fiduciary duty and the resulting damage to Schwartz was clearly established by Gregori's refusal, contrary to the best interests of the plan participants, of Kuczek's offer to reimburse the plan. We find no clear error in the court's findings of fact on this issue, and reject Gregori's claim, unsubstantiated by competent evidence or legal authority, that the IRS would not permit a fiduciary to reimburse the plan for losses caused by his investments. 29 U.S.C. Sec. 1109(a) (obligation of fiduciary to reimburse plan for losses caused by breach of fiduciary duty)
 
 
 [3]
 Fleming v. Ayers & Assoc., 948 F.2d 993 (6th Cir.1991); Browning v. Gutchess, No. 87-3420, 1988 WL 28798 (6th Cir. Apr. 5, 1988)
 
 
 [4]
 Under Mertens, we cannot characterize relief as equitable solely because a court sitting in equity has the power to award it. "[L]imiting the sort of relief obtainable under Sec. 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief not at all. We will not read the statute to render the modifier superfluous." Mertens, --- U.S. at ----, 113 S.Ct. at 2069 (emphasis in original; footnote and citations omitted). Thus, if Terry had characterized the back pay approved in Mitchell as equitable simply because it was within the power of a court sitting in equity to award, Mertens would preclude a determination that back pay is equitable in nature and available under Sec. 502(a)(3). However, Terry characterized the back pay in Mitchell as restitutionary, a remedy expressly recognized by Mertens as equitable
 
 
 [5]
 Contra Waldrop v. Southern Co. Serv., Inc., 24 F.3d 152 (11th Cir.1994) (categorizing back pay as legal remedy under Sec. 504(a) of the Rehabilitation Act, 29 U.S.C. Sec. 794(a), and rejecting argument that back pay is restitutionary in nature)