Sharon L. SUGGS, Plaintiff–Appellee,

v.

**SERVICEMASTER EDUCATION FOOD MANAGEMENT, Defendant–Appellant.**

No. 94–5596.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1995.

Decided Jan. 2, 1996.

---

Richard L. Colbert (briefed), Rebecca L. Wells-Demaree (argued and briefed), Cornelius & Collins, Nashville, TN, for plaintiff-appellee.

Thomas J. Piskorski (argued and briefed), Elizabeth H. Skalitzky, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant-appellant.

Before: KEITH and BATCHELDER, Circuit Judges; ROSEN, District Judge.*

BATCHELDER, Circuit Judge.

The defendant employer appeals from the district court's judgment that the plaintiff was discriminatorily discharged, and from the court's order of reinstatement and award of damages. For the reasons that follow, we affirm in part but remand for clarification.

## I.

This action originated when Sharon L. Suggs, a black female, filed with the Equal Employment Opportunity Commission (EEOC) an employment discrimination charge against ServiceMaster Education Food Management ("ServiceMaster"), claiming that her termination was based on sex or

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

race. After the EEOC issued Suggs a notice of right to sue, she timely filed suit in federal district court, claiming ServiceMaster had discriminated against her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Following a two-day bench trial, the district court awarded judgment to Suggs and ordered ServiceMaster to reinstate her. The court awarded Suggs $100,460.03 in back pay from the time of her termination in January 1991 to the end of trial. In addition, the court's damage award required ServiceMaster to pay Suggs "additional backpay based on an annual salary of $44,409.63 for the period from the conclusion of trial on December 8, 1993, through the effective date of an offer of reinstatement by ServiceMaster to Ms. Suggs."[1] ServiceMaster timely appealed both the district court's judgment in favor of Suggs and the court's award of damages.

## II.

Suggs has a B.S. degree in food and nutritional sciences from Tuskegee Institute. ServiceMaster, a corporate/institutional food catering service, hired Suggs as an assistant-director in 1984. In 1988, she was promoted to director and was given responsibility for the ServiceMaster account at Tennessee State University ("TSU"). TSU was responsible for maintaining and repairing the equipment in its cafeteria. ServiceMaster personnel had no authority to make repairs to the equipment or physical plant. In September 1989, the health department closed the main campus cafeteria at TSU for several hours to correct significant problems with the facility conditions. Terry Van Booven, the Service-Master area manager to whom Suggs reported, conceded that the facilities were a "significant part" of the reason for the shut-down and that Suggs was not authorized to order repairs.

One week after the shut-down, Van Booven approved a four percent pay raise for Suggs. Van Booven then ranked the directors under his supervision according to the profitability of their facilities and quality of service provided to their clients. Suggs was ranked fifth among the twelve directors, higher than the other two female directors. Van Booven approved another four percent pay increase for Suggs in October 1990. He rated Suggs' performance in the area of client relations as "satisfactory" on her November 1990 evaluation. The next month, Suggs was informed that she would be removed from her position at TSU. ServiceMaster determined that Suggs was "over-qualified" for an assistant-managerial position, but she was considered qualified to handle the same size or slightly smaller account than the TSU account. Suggs was terminated on January 17, 1991, and was given ten days' severance pay. According to her employment contract, Suggs would have been eligible for severance pay only if she had performed her job adequately. In a letter to Suggs, ServiceMaster stated that "major issues concerning [her] separation from ServiceMaster ... were: (1) client dissatisfaction; (2) continuing unresolved operational problems; [and] (3) failure to meet financial and budget commitments."

Gordon, the man who replaced Suggs as director of the TSU account after Suggs was terminated, testified that Van Booven told him "a woman shouldn't have been running the magnitude of complex like that," and that it was time to show that a man could run the operation better. The production supervisor for the TSU account testified that he overheard a conversation between Van Booven and Gordon in which Van Booven said that "since [Suggs] was gone ... [Van Booven] thought the operation was run better with a man in charge." When ServiceMaster lost the TSU account to another company in June 1991, ServiceMaster offered the male production supervisor of the TSU account three different director positions, in New York, Kentucky, and North Carolina. Gordon's employment with ServiceMaster ended when the TSU account was lost. ServiceMaster did not offer Gordon a position elsewhere, and he accepted a job offer to work as assistant manager of the TSU account for the

---

1. Although the district court labelled the post-trial damages "additional backpay," such an award is characterized by the case law as "front pay," *see* discussion *infra.* The $44,409.63 figure was based on the uncontroverted evidence presented at trial regarding the plaintiff's salary at the time of her termination and her salary history with ServiceMaster.

company that had replaced ServiceMaster at TSU.

Bryant, a male director who had been ranked below Suggs, was promoted to area manager in 1992. Herman, who had been ranked last among the twelve directors, was promoted and transferred when he lost the account for which he was responsible. Neither of the female directors who had been ranked with Suggs remained at ServiceMaster at the time of trial. After being demoted and placed under the direction of another (male) manager, one of the women directors had resigned. The other woman director had also left ServiceMaster and had been replaced by a man.

### III.

### A. The district court did not err in finding that Suggs had been discharged in violation of Title VII.

█ To prevail on her individual disparate treatment claim of discriminatory discharge, the plaintiff must prove the following elements: she belongs to a protected class; she was qualified for her position; she was discharged by the defendant; and after she was discharged, she was replaced with a similarly qualified person or her employer sought a similarly qualified replacement, see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), who was not a member of her protected class; and her treatment differed from that accorded to otherwise similarly-situated individuals outside her protected group. *Shah v. General Electric Co.*, 816 F.2d 264, 267–68 (6th Cir.1987). After a bench trial, the district court made extensive findings of fact and analyzed the evidence presented under the framework of *McDonnell Douglas*, finding that the female plaintiff in this case was indisputably a member of a protected class, that she had been terminated by the defendant and replaced by a man, and that she had demonstrated that she was qualified for the position from which she had been discharged. The court found that Service-Master had met its burden of introducing evidence of nondiscriminatory reasons for Suggs' discharge after Suggs had established a prima facie case of discrimination in viola-

tion of Title VII. However, the district court concluded from a preponderance of the evidence that ServiceMaster's proffered reasons for removing Suggs from her position and terminating her employment were a pretext to mask unlawful discrimination.

█ Since this case proceeded to trial on the merits, on review, this Court does not revisit the *McDonnell Douglas* analysis of whether the plaintiff established a prima facie case of discrimination. Rather, we proceed directly to the ultimate question of whether the plaintiff carried her burden of proof of discriminatory discharge. *See Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 513–14 (6th Cir.1991); *Brownlow v. Edgecomb Metals Co.*, 867 F.2d 960, 963 (6th Cir.1989); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 942 (6th Cir.1987). We will not disturb the district court's finding of intentional discrimination unless it was clearly erroneous, and we must give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). In this case, after reviewing the evidence presented, the district court credited the evidence supporting Suggs' claim that the reasons stated by ServiceMaster for her discharge—client dissatisfaction, operational problems and failure to meet financial and budget commitments—were pretextual.

The evidence does not support a claim that ServiceMaster's client TSU was dissatisfied with Suggs in particular. Although Service-Master's contract with TSU provided that the client could request removal of Service-Master employees from the TSU account, no TSU official ever made such a request, and Suggs' manager had, only weeks before her termination, given her a satisfactory rating on client satisfaction. Competent evidence in the record concerning "operational problems" points to the TSU facility itself, rather than to Suggs' management, as the principal source of those problems. Suggs had no authority to order repairs to the facility, which, because of its deplorable condition, was eventually demolished. As to Suggs'

purported failure to meet financial and budget commitments, the evidence indicated that the problems regarding TSU's non-payment of overdue invoices had been ongoing for many years prior to Suggs' promotion to director of the account. She had recently been evaluated favorably for profitability. Suggs received merit raises throughout her period of employment with ServiceMaster. Suggs' manager had consistently rated her performance favorably and had recently approved another increase in her salary. When she was terminated, Suggs was given ten days of severance pay to which she would not have been entitled if she had been discharged for failing to perform her duties adequately.

The evidence supports Suggs' claim that ServiceMaster's stated reasons for terminating her employment were pretextual and that Suggs was actually terminated because she was a female. Suggs was qualified for the position she held. She was replaced by a man and was not offered another position with the company when she was removed from the TSU account and later terminated, although ServiceMaster had identified positions available at other locations. In contrast to ServiceMaster's treatment of Suggs, other directors in Suggs' area, who had been ranked below Suggs for profitability and client satisfaction, were offered transfers and relocations when their accounts were lost. Those directors were men. The district court's finding that Suggs had been discriminatorily discharged is not clearly erroneous.

**B. The district court did not abuse its discretion in calculating the damages awarded to Suggs.**

*1. The court's order of reinstatement and award of back pay was proper.*

▮ We review back pay awards for an abuse of discretion. *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (1989). The goal of Title VII is to "make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Plaintiffs who prove discrimination in violation of Title VII are entitled to reinstatement, unless exceptional

circumstances make the chances for a satisfactory employment relationship unlikely. *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985) (*"Shore I"*). An award of back pay is presumptively favored in employment discrimination cases. *Albemarle*, 422 U.S. at 405, 95 S.Ct. at 2362; *Henry v. Lennox Ind., Inc.*, 768 F.2d 746, 752 (6th Cir.1985). Pursuant to the "make whole" purposes of such relief, the general rule is to award back pay through the date of judgment. *Terbovitz v. Fiscal Court of Adair Cty.*, 825 F.2d 111 (6th Cir.1987).

> The back pay award should completely redress the economic injury the plaintiff has suffered as a result of discrimination. It should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination.

*Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir.1988).

▮ A plaintiff in an action under Title VII has a duty to mitigate damages; she may not remain unemployed and collect a windfall. *Ford v. Nicks*, 866 F.2d 865 (6th Cir.1989). This mitigation requirement contains the general element of reasonableness. "An employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so." *Id.* at 873. The finding that a Title VII claimant has exercised reasonable diligence in seeking other suitable employment following discriminatory discharge is an issue of fact which will not be reversed on appeal absent clear error. *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 623 (6th Cir.1983).

▮ In this case, although ServiceMaster argues on appeal that Suggs is not entitled to back pay beyond June 1991, the date ServiceMaster lost the TSU account, its arguments are not persuasive. The district court properly concluded that Suggs was qualified to perform the job of director and that such positions were available around the time of Suggs' removal from the TSU account. No evidence was presented of the

kind of exceptional circumstances militating against reinstatement, *see Shore I,* 777 F.2d at 1159; *In re Lewis,* 845 F.2d 624, 630 (6th Cir.1988). Here, the plaintiff presented uncontested evidence of her salary, regular increases during her employment with ServiceMaster, and reasonable efforts to find suitable substitute employment after having been discharged by ServiceMaster. Suggs immediately secured alternative employment as a substitute teacher, work she continued for the next two years. Suggs then began work at a Head Start Program, where she remained at the time of trial. The district court's factual finding that Suggs satisfied her duty to mitigate damages is not clearly erroneous, and the court did not abuse its wide discretion in ordering ServiceMaster to reinstate Suggs to the position of director and pay her back pay in the amount of $100,460.03.[2]

*2. The award of "additional back pay" must be remanded for clarification.*

 Courts generally award front pay when reinstatement is inappropriate or infeasible. *Schwartz v. Gregori,* 45 F.3d 1017, 1022 (6th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 77, 133 L.Ed.2d 36 (1995). Thus, the remedies of reinstatement and front pay are alternative, rather than cumulative. . *See id.; accord Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 954 (1st Cir.1995); *Smith v. World Ins. Co.,* 38 F.3d 1456, 1466 (8th Cir.1994); *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 890 (3d Cir.1984). Determination of when to award front pay is within the discretion of the trial court, and such awards are reviewed under the abuse of discretion standard. *Schwartz,* 45 F.3d at 1022. Title VII claimants have a duty to mitigate an award of front pay. *Shore v. Federal Express Corp.,* 42 F.3d 373, 378 (6th Cir.1994) *("Shore II ").*

 Generally, in awarding front pay, the following factors are relevant: (1) the employee's future in the position from which she was terminated; (2) her work and life expectancy; (3) her obligation to mitigate her damages; (4) the availability of comparable employment opportunities and the time rea-

sonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) "other factors that are pertinent in prospective damage awards." *See Fite v. First Tenn. Prod. Credit Ass'n,* 861 F.2d 884, 893 (6th Cir.1988) (quoting *Shore I,* 777 F.2d at 1160).

 In this case, the district court specifically ordered that Suggs be reinstated to the position from which she had been discharged and ordered that ServiceMaster pay Suggs "additional backpay" (actually, front pay) from the conclusion of trial on December 8, 1993, until the effective date of an offer of reinstatement by ServiceMaster to Suggs. Thus, the district court's order had the effect of awarding cumulative remedies, either of which could have been appropriate. Although nearly two years have passed since the end of trial, ServiceMaster has apparently still not made Suggs an offer of reinstatement. The record in this case does not reflect whether Suggs will be unable to obtain comparable replacement employment, *see Shore II,* 42 F.3d at 378, nor does it appear that ServiceMaster has successfully stayed the district court's order of reinstatement. This Court is not in a position to know whether reinstatement is still an appropriate or feasible remedy, and if not, whether an award of front pay is warranted in this case, and if so, how much front pay Suggs should receive.

Awards under Title VII must be reasonable: An employee who was discriminatorily discharged must be made whole, but is not entitled to a windfall. *See Albemarle,* 422 U.S. 405, 95 S.Ct. 2362; *Terbovitz,* 825 F.2d 111; *Nicks,* 866 F.2d at 873. "The purpose of front pay in a Title VII case is to put an injured party in the same position the party would have occupied in the absence of the discrimination, neither more nor less." *Griffin v. Michigan Dept. of Corrections,* 5 F.3d 186, 189 (6th Cir.1993). After her discharge, Suggs promptly secured alternative employment, but this alternative employment was not equivalent to the position from which she

---

**2.** This figure represented the amount of salary Suggs would have earned from the date of termi-

nation through the date of trial, less what she had earned in substitute employment.

had been terminated. From the date of her discharge through the conclusion of trial, Suggs worked at jobs that were less lucrative than her employment with ServiceMaster. The record on appeal obviously does not inform this Court about Suggs' efforts since the conclusion of trial to gain more advantageous employment or the availability of such employment opportunities.

When a district court determines that front pay is appropriate because reinstatement is inappropriate or infeasible, the court must make its award of front pay reasonably specific as to duration and amount, and the amount of a front pay award must be reduced to present value. *See Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 399–400 (6th Cir.1993), *cert. denied*, ——— U.S. ———, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); *accord Carter v. Sedgwick County*, 929 F.2d 1501, 1505 (10th Cir.1991) ("[A] front pay award must specify an ending date and must take into account any amount that the plaintiff could earn using reasonable efforts."). In *Roush*, we reversed the district court's grant of front pay as unsupported by the record and cited the list of factors the court must consider in awarding front pay, including, *inter alia*, the employee's duty to mitigate damages; the appropriate duration of the award based on availability of alternative employment opportunities and the employee's work and life expectancy; and the discount tables to be applied to reduce the amount of the award to present value. *Id.* (quoting *Shore I*, 777 F.2d at 1160). This Court affirms awards of front pay where they are warranted and where the finder of fact has considered the factors necessary to set the amount of the award. *See, e.g., Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir.1995); *Schwartz*, 45 F.3d at

1023; *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1334–35 (6th Cir.1994) (all affirming awards of front pay where the *Shore /Roush* factors had been considered).

Because ServiceMaster has not complied with the court's order to reinstate Suggs, we REMAND so that the district court may determine whether reinstatement is appropriate or feasible in this case. If not, the court may, consistent with this opinion and this Court's precedent, consider whether an award of front pay is warranted. Because the remedies of reinstatement and front pay are alternative rather than cumulative, the language of the district court's order must clearly reflect what remedy is being awarded so that the result is reasonable and comports with the goal of Title VII and our case law interpreting that statute that employees who suffer discriminatory discharge be. made whole but not receive windfalls.[3]

Inasmuch as the district court's award of backpay was appropriate, *see supra*, and ServiceMaster apparently did not obtain a stay of the court's order to reinstate Suggs, the award of backpay can continue to run through the date of the district court's additional findings, less what Suggs has earned in substitute employment since the end of trial. On remand, if the district court determines that reinstatement remains the appropriate remedy, Suggs may bring an enforcement action in the event that ServiceMaster fails to comply with such an order, because the district court may retain jurisdiction to enforce the judgment it enters. *See NLRB v. Cincinnati Bronze*, 829 F.2d 585, 588 (6th Cir.1987).[4] The case is therefore REMANDED for further proceedings consistent with this opinion.

---

3. This case is distinguishable from the *Shore* litigation, because the front pay award in that case was not really open-ended since it ran only to the end of the plaintiff's expected work-life expectancy and did not involve both an order of reinstatement and an order awarding front pay. *See Shore II*, 42 F.3d 373.

4. If the district court determines that reinstatement is inappropriate and, after consideration of the *Roush/Shore* factors, the court determines that an award of front pay is warranted in this case, the court may wish to consider, *e.g.*, the continued court-monitoring approach taken in

*Stafford v. Electronic Data Systems Corp.*, 749 F.Supp. 781 (E.D.Mich.1990), or the court may find it preferable to award front pay in a lump sum, or may design some other method. Because of the wide discretion afforded the district court in fashioning a remedy under Title VII, *see Albemarle*, 422 U.S. at 417, 95 S.Ct. at 2371, and the importance of permitting the court flexibility to devise the appropriate remedy, *see id.* at 422, 95 S.Ct. at 2374; *see also Shore II*, 42 F.3d at 378; *Fite*, 861 F.2d at 893; *Shore I*, 777 F.2d at 1159, we decline to prescribe any particular approach to be used by the district court.

## IV.

The district court's judgment that Suggs was terminated in violation of Title VII is AFFIRMED; the district court's order awarding Suggs reinstatement and back pay from the date of her termination through the end of trial is AFFIRMED; however, we REMAND to permit the district court to clarify that portion of the order awarding "additional front pay," and to consider the plaintiff's request for additional attorney fees and costs.