**Robert COX, Plaintiff–Appellant,**

v.

**SHELBY STATE COMMUNITY COLLEGE, et al., Defendants–Appellees.**

**No. 00–6295.**

United States Court of Appeals, Sixth Circuit.

Sept. 24, 2002.

---

Before BOGGS and BATCHELDER, Circuit Judges; and STEEH, District Judge *.

PER CURIAM.

Plaintiff Robert Cox appeals the dismissal of his civil rights, employment discrimination, and constitutional tort claims for failure to state a claim upon which

relief can be granted. Fed.R.Civ.P. 12(b)(6). Cox brought a 42 U.S.C. § 1983 civil rights action against Shelby State Community College, its president, Floyd Amman, the College Board of Regents, and the State of Tennessee, alleging race discrimination and unlawful retaliation under Title VII, violation of civil rights under 42 U.S.C. § 1981, and violation of the First and Fourteenth Amendments of the United States Constitution. We affirm the district court's dismissal of Cox's Fourteenth Amendment procedural due process claim and § 1981 claim, but reverse and remand the remaining claims for further proceedings.

I

Robert Cox was a black professor of psychology at Shelby State Community College. During his twenty-five years of employment, Cox filed several complaints of racial and gender-based discrimination with the Affirmative Action Office at the College. Cox argues that he was targeted for termination by the College because of his complaints about the College's alleged discriminatory practices.

In August 1997, Cox was removed from his teaching duties, and was assigned to the school library as a library assistant. On November 4, 1998, Amman and the Board of Regents brought charges against Cox. The parties do not specify the nature of the charges. On January 21, 1999, the hearing committee voted to fire Cox. His termination was effective April 30, 1999.

Cox sued, claiming that the College and Amman discriminated against him because of his race, and that the hearing was insufficient to protect his Fourteenth Amendment due process rights. Further, he

---

* The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

complained that the prior "affirmative action officer" at Shelby State was called to testify at the hearing regarding his former complaints of race discrimination; this, he alleged, violated his First Amendment rights, and was retaliation for filing the race discrimination claims.

The district court granted defendants' motion to dismiss for failure to state a claim on each claim. Cox timely appealed.

## II

We review *de novo* a district court's dismissal of a claim, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. A 12(b)(6) motion simply tests the sufficiency of the pleadings, and does not resolve the facts of the case. The standard for such a dismissal is a high one: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing the complaint, the court must accept facts in the complaint as true, and construe all facts pled in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### 1. § 1983 Claim

■ 42 U.S.C. § 1983 allows an individual to bring a civil action, against a person operating under color of state law, to enforce rights granted by the United States Constitution or another federal statute. Cox's complaint alleges that the defendants, under color of state law, denied him his rights under federal statutes (Title VII and 42 U.S.C. § 1981) and under the Constitution (First and Fourteenth Amendments).

Section 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The district court concluded that Cox's 42 U.S.C. § 1983 action could not be maintained against the College, Amman, or the Board of Regents, because state instrumentalities and officials operating in their official capacities are not "persons" under § 1983. In so finding, the court relied on *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In *Will,* the plaintiff alleged that he had been improperly refused a position as a data analyst with the Michigan State Police because his brother had been a student activist. *Will,* 491 U.S. at 60, 109 S.Ct. 2304. The Court decided: "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66, 109 S.Ct. 2304.

The district court read *Will* to mean that a state official acting in his official capacity is an arm of the state, and therefore not a "person" under 42 U.S.C. § 1983. On this reading, individual plaintiffs would be barred from asserting any claim whatsoever against state officials in their official capacities: regardless of the nature of the relief, that defendant is not a "person" liable to suit under the statute. The district court stated:

Here, Plaintiff names as Defendants the Board of Regents, the State of Tennessee, Amman in his official and individual capacities, and Shelby State. Assuming that Plaintiff's claim under § 1983 is otherwise proper, the state, its agencies, and employees in their official capacities, are not 'persons' within the meaning of 42 U.S.C. § 1983, and consequently, this court lacks jurisdiction over them.

However, *Will* noted, in a footnote: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity' actions for prospective relief are not treated as actions against the State." *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304. The Sixth Circuit, in *McKay v. Thompson,* 226 F.3d 752 (6th Cir.2000), followed this approach. The court noted: "The district court correctly determined that the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983." *Id.* at 757.

Cox's complaint does request injunctive relief: he has asked the court to order his reinstatement. JA 13. His § 1983 action, insofar as it is for injunctive relief, is not barred by *Will.*

2. Eleventh Amendment Immunity

The district court also held that Cox's claims were barred by the Eleventh Amendment. We review questions of sovereign immunity *de novo. Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 836 (6th Cir.1997). The Eleventh Amendment protects states from suit by citizens of a sister or foreign state. U.S. Const. amend. XI. Case law interpreting the related concept of sovereign immunity prohibits suits against a state by one of its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The College and Amman in his official capacity are arms of the state, and therefore benefit from the state's total immunity from suit. There are three exceptions to this rule. A state may consent to suit. Congress may act, pursuant to its Fourteenth Amendment Enforcement Clause powers, to abrogate state sovereign immunity. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Finally, the Supreme Court held, in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that the Eleventh Amendment does not bar a federal court from issuing an injunction ordering prospective relief against a state official in order to prevent future constitutional violations. In this case, the district court incorrectly applied the second and third exceptions to sovereign immunity.

■ The district court found that Amman was entirely insulated from Cox's suit by sovereign immunity. However, insofar as Amman is sued in his official capacity, he is not liable for money damages, but may be subject to injunctive remedies. Cox has asked for the equitable and prospective remedy of reinstatement. This portion of Cox's suit is not barred by the Eleventh Amendment.

■ Further, Cox sued Amman in both his individual and official capacities. Amman may be held liable for tortious acts committed in his individual capacity: there, he only benefits from qualified immunity. Insofar as Cox's suit asserts claims for damages against Amman in his individual capacity and for his personal torts, it is not barred by the Eleventh Amendment.

■ Finally, the district court improperly relied on sovereign immunity to dismiss Cox's Title VII claim, for both injunctive relief and money damages, against the institutional defendants. Congress acted

validly under its Fourteenth Amendment Enforcement Clause powers to abrogate state sovereign immunity to Title VII claims. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Because the Eleventh Amendment simply does not apply to Title VII claims, dismissal of the claim for lack of jurisdiction was improper.

### 3. Title VII Claim

■ Having disposed of the various jurisdictional questions, we now consider the substances of Cox's statutory and constitutional claims. Cox first alleged that he was terminated from his employment in violation of Title VII of the Civil Rights Act, which prohibits discrimination "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). As an initial matter, we affirm the district court's determination that defendant Amman is not liable to suit in his individual capacity under Title VII because he is not an employer as defined by that statute. *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997). However, as above, the institutional defendants and Amman in his official capacity are not protected by sovereign immunity, because that immunity has been abrogated by Congress. *Fitzpatrick*, 427 U.S. at 456, 96 S.Ct. 2666.

■ Under Title VII's opposition clause, § 704(a), an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII. *Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir.2000). Section 704(a) states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made

an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

For *general* (non-opposition-clause) Title VII claims, if the plaintiff presents no direct evidence of discrimination, courts employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to make out a *prima facie* case for racial discrimination under Title VII, the plaintiff must show that (1) he was a member of a protected class; (2) he was subjected to an adverse employment actions; (3) he was qualified for the position in question; and (4) he was replaced by someone outside the class, or a similarly situated non-minority employee was treated differently. *Id.* at 802, 93 S.Ct. 1817; *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

In this case, Cox offered no direct evidence of discrimination. Therefore, the district court analyzed the case under *McDonnell Douglas*. Cox was a member of a protected class, and termination was an adverse action. The district court dismissed Cox's Title VII claim under Rule 12(b)(6) because he failed to allege that similarly situated, non-protected employees were treated more favorably. The district court concluded that Cox had failed to make out a *prima facie* case under *McDonnell Douglas*.

The district court's disposition of the issue was incorrect, because the requirements for a *prima facie* case under Title VII's opposition clause differ from those required for a generic claim of racial discrimination in employment. To succeed on

a claim under § 704(a), an employee need demonstrate only that he was fired in retaliation for opposing what he reasonably believed to be a discriminatory practice. *Johnson,* 215 F.3d at 580. This Circuit held in *Johnson:*

> [H]aving established that he opposed conduct which he reasonably believed to be unlawful, and that Defendant was aware of Plaintiff's opposition, Plaintiff also provided evidence to show that his opposition was causally related to his discharge .... Thus, Plaintiff has demonstrated a *prima facie* case of retaliatory discrimination under Title VII's opposition clause through his claims that he opposed Defendant's violations of Title VII, that Defendant knew of Plaintiff's opposition, and that Plaintiff's opposition was causally related to his termination.

*Id.* at 581. Cox met these elements when he alleged he had been discharged for his opposition to what were, in his view, Shelby State's racially discriminatory practices. The causal connection between opposition and discharge was established by Cox's allegation that the College's affirmative action officer testified against him at his discharge hearing about his prior EEOC filings regarding the College's allegedly discriminatory practices. Our holding is reinforced by the Supreme Court's recent decision in *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which held that the prima facie case in a Title VII action is an evidentiary standard, not a pleading requirement.

Although we express no opinion about whether Cox will be able to survive summary judgment on this claim, the pleadings are sufficient, and Rule 12(b)(6) dismissal was unwarranted. We therefore reverse, and remand this claim to the district court for further proceedings based on the proper standard.

4. § 1981 Claim

Section 1981 reads:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). A plaintiff may bring an action under 42 U.S.C. § 1983 to enforce the rights created by 42 U.S.C. § 1981. *Chai v. Michigan Tech. Univ.,* 493 F.Supp. 1137, 1148 (W.D.Mich.1980). As the district court correctly noted, in order to survive a motion to dismiss, a § 1981 plaintiff must establish a *prima facie* case of discrimination under *McDonnell Douglas. Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Jackson v. City of Columbus,* 194 F.3d 737, 751–52 (6th Cir. 1999).

Cox argues that his removal from the classroom and reassignment to the library were violations of his rights under § 1981. The district court declined to consider these arguments, because it determined that these events fell outside of the statute of limitations for civil rights actions in Tennessee. Tenn.Code Ann. § 28–3–104(a)(3) (civil actions brought for compensatory or punitive damages under the Federal Civil Rights statutes "shall be commenced within one year after the cause of action accrued."). Cox was removed from the classroom and reassigned to the library in August 1997. He filed this suit on January 12, 2000.

Cox cannot receive compensatory or punitive damages from his § 1981 claim, insofar as it is based on events occurring

more than a year prior to the filing of suit. There is a question, however, as to whether or not he may obtain injunctive relief, since claims for prospective non-monetary relief are not expressly limited by the Tennessee statute. However, in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court directed federal courts to apply the most analogous state personal injury statute of limitations to claims brought under 42 U.S.C. § 1983 when no state statute directly governs the limitations period. The one-year statute of limitations period in Tenn.Code Ann. § 28–3–104(a)(1), for personal injury, has been traditionally used as the civil rights limitations period in Tennessee. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir.1986).

■ We recognize that the cases are not entirely consistent. *See, e.g., Hedgepeth v. Tennessee*, 33 F.Supp.2d 668, 678 (W.D.Tenn.1998) (dismissing claims for money damages under Tenn.Code Ann. § 28–3–104(a)(3) based on events occurring more than one year prior to suit but retaining claims for injunctive and declaratory relief). However, the best interpretation of our precedent directs us to apply the personal injury statute of limitations period set forth in § 28–3–104(a)(1) to Cox's claims for injunctive relief. Dismissal of Cox's § 1981 claim is therefore proper if Cox's cause of action accrued more than one year prior to January 12, 2000.

■ Federal law governs when the cause of action accrues. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 183 (6th Cir.1990). This court considers a cause of action to have accrued when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier*, 742 F.2d at 273. We toll a statute of limitations if there is a continuing violation of the plaintiff's rights, but in so doing, look to what event "should have alerted the average lay person to protect his rights." *Dixon v. Anderson*, 928 F.2d 212, 218 (1991). Here, Cox's § 1981 claim is rooted in his argument that he was evaluated more harshly as a professor than similarly situated white professors, and that he was removed from the classroom in 1997 as a result of this disparate evaluation. Cox's 1997 removal from his teaching position was an event that would alert a potential civil rights plaintiff to protect his rights. We therefore conclude that the district court acted correctly in dismissing Cox's § 1981 claims as untimely under the Tennessee statute of limitations.

5. Fourteenth Amendment: Procedural Due Process

■ Cox alleges that his termination hearing was improperly conducted, and that procedural irregularities in the College's hearing process constituted a denial of due process under the Fifth and Fourteenth Amendments of the Constitution. The district court correctly determined that procedural irregularities in a state's hearing procedure do not rise to the level of a constitutional violation. *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir.1996). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993).

State employees who have a property interest in their employment are entitled to certain minimum process before being fired. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill*, the Supreme Court held that a state employee discharged for just cause is entitled to "oral written notice of the charges against

him, and explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. 1487. Here, Cox received notice and was given an opportunity to respond. The procedural irregularities of which Cox complains did not deprive Cox of notice or a hearing. Because his complaint is based on the state's deviations from its own procedures, rather than a denial of the minimal process that is constitutionally required, Cox can prove no set of facts on these pleadings that would constitute a violation of due process. Consequently, we affirm the district court's Fed.R.Civ.P. 12(b)(6) dismissal of this claim.

6. First Amendment

■ Cox alleges that the defendants retaliated against him for the exercise of speech protected by the First Amendment, and that the district court erred in dismissing his First Amendment claim. Not all speech by a public employee is protected by the First Amendment. In order to make out a *prima facie* case for a First Amendment claim, a public employee who claims that an employment decision was made in retaliation against protected speech must show that (1) he was engaged in constitutionally protected activity, and (2) that the activity was the motivating factor in the adverse employment decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). To determine whether the speech was constitutionally protected, courts examine whether the speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Here, the arguments made by the parties do not connect. Defendants seem to believe that Cox was asserting a First Amendment claim based on some changes he had proposed making to the syllabus. Defendants point to *Ballard v. Blount,* 581 F.Supp. 160 (N.D.Ga.1983), where a professor's criticism of a required course syllabus was held not to be a matter of public concern. However, Cox's complaint alleges that he was terminated for the filing of EEOC complaints, regarding racial discrimination at the College.

The district court asserted that Cox brought his First Amendment claim based on no legal authority, and dismissed the claim. However, a plaintiff is not required to support each claim with extensive legal authority; a simple and clear statement of the claim is enough. The existing legal framework seems capable of resolving Cox's claims, once they are developed. The question is simply one of whether an EEOC filing, on the grounds of racial discrimination, is speech on a matter of public concern.

Litigation, even over such socially sensitive issues as racial discrimination may, or may not, be a matter of public concern. In *Rice v. Ohio Dep't of Transp.,* 887 F.2d 716, 720–21 (6th Cir.1989), the Sixth Circuit held that EEOC charges, insofar as they relate to purely personal employment issues, are not public speech meriting First Amendment protection. "Although it may be 'natural for lawyers to suppose that every legal pleading, however humble, comes trailing clouds of First Amendment glory,' … this quaintly Wordsworthian supposition is simply untenable. Some litigation, such as litigation to eliminate school segregation, clearly constitutes speech on a matter of public concern … but the legal action commenced by the plaintiff … had been instituted 'to promote her career, not promote a cause.'" *Rice,* 887 F.2d at 720–21 (citations omitted). The relevant question, therefore, is whether Cox was motivated to file in order to make a statement about racial discrimination in general on campus, or whether

his career was his primary concern. Due to the early dismissal of the case, the record is poorly developed on this point. We remand, because Cox could prove a set of facts, consistent with his pleadings, that would entitle him to relief on his First Amendment claim. *Conley*, 335 U.S. at 45–46, 68 S.Ct. 1375.

## III

For the above reasons, we AFFIRM the dismissal of Cox's Fourteenth Amendment due process claim and § 1981 claim. We REVERSE the district court's determination as to the applicability of § 1983, and REMAND Cox's Title VII and First Amendment claims for further consideration in light of this opinion.