NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0521n.06
Filed: July 25, 2006

**Nos. 05-5151, 05-5292**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT COX, | ) | |
| | ) | |
|     **Plaintiff-Appellee/Cross-Appellant** | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| SHELBY STATE COMMUNITY | ) | **DISTRICT OF TENNESSEE** |
| COLLEGE, et al. | ) | |
| | ) | |
|     **Defendants-Appellants/Cross-** | ) | |
|     Appellees. | | |

**BEFORE: KEITH and COLE, Circuit Judges; MILLS, District Judge.**[*]

**PER CURIAM**. In this Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, action for employment discrimination, Defendants-Appellants Shelby State Community College, State of Tennessee, and the Tennessee Board of Regents (collectively "Defendants") appeal the district court's denial of their post-trial motion for judgment as a matter of law after a jury verdict in Plaintiff-Appellee Robert Cox's ("Cox") favor. *See* Fed. R. Civ. P. 50. In addition, Defendants appeal the district court's award of front pay and attorney's fees to Cox. On cross-appeal, Cox appeals the district court's denial of his motion for back pay. For the reasons set forth below, we **AFFIRM** the district court in its entirety, but **REMAND** the issue of front pay to the

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

district court to recalculate the amount of front pay to be awarded based on Cox's correct age at the time of its decision.

## I.                                    BACKGROUND

### A.     Factual Background

Cox, an African-American male, was a tenured professor of Psychology at Shelby State Community College ("Shelby State" or "the College"). Until his formal termination, he had been employed in that capacity for approximately 25 years. During Cox's employment with Shelby State, he complained of racial and gender discrimination at Shelby State and filed several complaints with the College's affirmative action officer. Cox also filed racial discrimination charges with the Equal Employment Opportunity Commission. It is undisputed that these actions were protected activity.

In January 1996, Cox began teaching a psychology telecourse, which had previously been taught by one instructor. Cox received some negative criticism regarding his management of the course from both students and colleagues. Cox perceived this feedback as racial and gender-based discrimination and filed grievances with the affirmative action officer.

On August 23, 1996, the dean in charge of faculty for Cox's department, Dr. R. Rita Dorsey ("Dr. Dorsey"), wrote to the Interim Vice President of Academic Affairs, Dr. Gwen Herndon ("Dr. Herndon"), requesting that Cox be removed from the classroom for the Fall 1996 term. (J.A. 856.) A week later, on August 29, 1996, Dr. Dorsey formally instructed Cox's department chair, Dr. Lovberta Cross, to remove Cox from telecourses during the Fall 1996 semester. *Id.* at 855. Specifically, Dr. Dorsey stated, "there have been numerous student complaints regarding his handling of these courses along with concomitant concerns expressed by Continuing Education staff. . . . Until further notice, Mr. Cox will not be allowed to teach telecourses. Please rearrange his

schedule to reflect this directive." *Id.*

On May 23, 1997, Cox filed a racial discrimination charge against the President of Shelby State, Floyd Amann ("President Amann"), arising out of the denial of a travel reimbursement that Cox believed he was entitled. In July 1997, Dr. Shirley Jennings ("Dr. Jennings") began her employment with Shelby State as the new Vice President of Academic Affairs. She reported directly to President Amann. On August 7, 1997, Dr. Jennings sent Cox a memorandum informing him that she had met with Dr. Dorsey, on August 4, 1997, to discuss student complaints about Cox and that she had reviewed files regarding him left by Dr. Herndon. *Id.* at 937. The letter also outlined ten areas of concern surrounding Cox's employment with Shelby State. The most salient portion of the memorandum to the instant case reads as follows:

> 8. Through memos and actions you have a long history of filing racial and gender discrimination lawsuits that are not in the vein of problem solving for a better College; but are deemed baseless by the civil rights commission that takes up many hours of administrative time, distracts from student success, and adds little to the espirit de corp of the college.
>
> . . .
>
> Due to the seriousness and duration of the complaints from students, administrators, and staff, I have instructed Dr. Arch Griffin, department head, to suspend your teaching schedule for Fall 1997 until you and I have an opportunity to meet. . . . At that time I will make further recommendations either to develop a Faculty Development Plan or reassign you to a non-teaching position.

*Id.* at 938. Thereafter, Cox met with Dr. Jennings and was told that he needed to improve during the Fall 1997 semester. On August 25, 1997, in a memorandum, Dr. Jennings formally relieved Cox of his teaching duties for the upcoming 1997-98 academic year due to unsatisfactory performance. *Id.* at 861. In addition, this memorandum outlined a detailed action plan, which included the assignment of a supervisor to Cox, whom Cox was required to meet with weekly and submit

monthly written reports. The memorandum clearly communicates that Cox would have, at least, until the Fall 1997 term to demonstrate improvement. For example, many of the deadlines were set in December 1997, the end of the Fall term. In addition, the record demonstrates that as of October 1997 Cox was actively attempting to meet the requirements articulated in the action plan, which is evidenced by his submission of detailed reports recounting his success in monthly progress reports. *Id.* at 864-70.

Despite Cox's efforts toward fulfilling the requirements of the action plan, on November 25, 1997, less than three months after assigning him what she described as "assignments designed to increase his pedagogical skills and to improve his attitude," Dr. Jennings sent a letter to President Amann stating, "[h]e leaves me no alternative but to proceed with termination." *Id.* at 940. On December 4, 1997, in a letter to President Amann, Dr. Jennings said the following,

> I have . . . informed Mr. Cox that he will be reassigned to non-teaching duties in the records office in January and that we will immediately begin termination proceedings. I respectfully request that you appoint five tenured faculty members to serve on a committee to conduct an "informal inquiry of the facts giving rise to the proposed termination," as required by Shelby State policy 5:02:03:00.

*Id.* at 942. This action was done despite the College's promise that Cox would have the entire fall term to improve and that he would be re-evaluated for Summer and Fall 1998 teaching assignments based on his Fall 1997 progress. Thus, Cox was not given the benefit of the entire Fall 1997 term to complete the action plan although evidence in the record suggests that Cox was working diligently to meet the expectations established for him.

On December 8, 1997, Cox was informed that he was "removed from the status of faculty and all instructional duties at the College." *Id.* at 948. Around this time, Cox filed another racial discrimination complaint against two additional faculty members. These faculty members had

extensively critiqued the class syllabus Cox had submitted for review pursuant to his action plan. On January 5, 1998, Cox was reassigned pending termination proceedings to the position of Public Services Clerk in the library, a non-instructional position. *Id.* at 950.

Pursuant to the Tennessee Board of Regents ("TBR") Policy on Academic Freedom, Responsibility, and Tenure, President Amann formed an informal committee of five faculty members to conduct an inquiry into the facts and to make a recommendation to him regarding whether formal termination proceedings should commence. Cox nominated two members of the informal committee. The informal committee could not arrive at a mutually acceptable solution and stated, "after reviewing the documents on file regarding the case and discussing their pertinence, [the committee] finds that the information and history recorded regarding Mr. Cox warrants proceeding further." *Id.* at 957. The informal committee also found that "the available documents do indicate Mr. Cox's professional standards of conduct and behavior . . . are questionable and merit further investigation." *Id.*

Thereafter, a formal tenure termination committee was formed. It was at this point that President Amann transferred the matter of Cox's termination to the general counsel's office at the TBR. The TBR's attorneys formulated the specific charges brought against Cox. On or about November 4, 1998, more than a year after Cox was removed from the classroom, formal charges were brought against him by the TBR. By letter dated, November 4, 1998, TBR's general counsel, Bettye Springfield ("Attorney Springfield"), notified Cox of the charges being brought against him.

On January 21, 1999, the formal tenure termination committee began its proceedings. The committee included Cox's colleagues from the College. The committee was charged with determining if TBR had shown by clear and convincing evidence that there was good cause for

Cox's termination. For four months the formal committee examined evidence and heard testimony from witnesses for TBR and Cox. One of TBR's witnesses was the affirmative action officer who Cox had filed all of his internal discrimination complaints with, and in some instances, against. In addition, Attorney Springfield presented evidence of Cox's discrimination complaints at the termination hearing. Cox's attorney objected to such evidence as improper, but the evidence was still introduced to the committee. Shelby State contends that this was done solely to demonstrate Cox's lack of collegiality and unprofessional conduct toward his colleagues and the administration. At the conclusion of the termination hearing in April 1999, the formal committee voted 7-1 to recommend to President Amann that Cox's tenure be terminated.

Following TBR policy, President Amann reviewed the recommendation of the formal tenure termination committee that Cox be terminated. Upon review, President Amann approved the committee's recommendation and terminated Cox's tenure. Pursuant to TBR policy, Cox appealed his termination to the Chancellor of the TBR. The Chancellor upheld his termination. Cox's termination became effective April 30, 1999.

## B. Procedural Background

Subsequent to the exhaustion of Cox's administrative appeals, Cox filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging that Shelby State and certain faculty members subjected him to racial discrimination and retaliation. On October 14, 1999, the EEOC issued Cox a right to sue letter. Thereafter, Cox filed suit in the United States District Court for the Western District of Tennessee.

Cox sued, alleging that the College and President Amann discriminated against him because of his race, and that the hearing was insufficient to protect his Fourteenth Amendment due process

rights. Further, Cox complained that the affirmative action officer's testimony regarding his prior racial discrimination complaints violated his First Amendment rights and was unlawful retaliation under section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. As to each claim, the district court granted Shelby State's and President Amann's motions to dismiss for failure to state a claim. Cox timely appealed to this Court and we affirmed in part and reversed in part. *See Cox v. Shelby State Cmty Coll.*, 48 Fed. Appx. 500 (6th Cir. 2002) ("*Cox I*"). Specifically, in *Cox I*, this Court affirmed the dismissal of Cox's Fourteenth Amendment due process claim and § 1981 claim, but reversed the district court's determination as to the applicability of § 1983, and remanded Cox's Title VII and First Amendment claims to the district court for further consideration.

On remand to the district court, Defendants filed a motion for summary judgment, which the district court denied. Cox's jury trial began on March 29, 2004. At the close of Cox's case, the district court directed a verdict in favor of Defendant Amann, and dismissed Cox's First Amendment claim. On April 1, 2004, the jury returned a verdict for Cox on his Title VII retaliation claim and awarded him $320,000 in compensatory damages. Defendants filed a motion to set aside the verdict under Fed. R. Civ. P. 50 ("Rule 50"), and for a new trial under Fed. R. Civ. P. 59(a). United States District Judge Bernice B. Donald denied both motions.

In a subsequent series of orders and after a post-trial hearing, the district court remitted the jury's award of compensatory damages to $300,000 because of a statutory cap on such damages for an employer the size of Shelby State. In addition, the district court denied Cox's motion for reinstatement, but ordered the Defendants to pay front pay in the amount of $205,453; and the court awarded Cox attorney's fees and costs in the amount of $127,822. Cox also motioned the district court to award prejudgment and post-judgment back pay interest. The court denied Cox's motion

for back pay stating that the issue of back pay was awarded by the jury. A final order of judgment was entered on December 15, 2004 and the district court denied Defendants' motion for a new trial on December 30, 2004.

Shelby State appealed the district court's denial of their post-trial motion for judgment as a matter of law pursuant to Rule 50(b). Cox appealed the district court's denial of his request for back pay. Both appeals were consolidated by order of this Court on April 21, 2005 and are now before us in the instant appeal.[1]

## II. ANALYSIS

### I. THE DISTRICT COURT DID NOT ERR IN DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50.

### A. STANDARD OF REVIEW

On appeal, Defendants assert that the district court erred in denying their renewed motion for judgment as a matter of law pursuant to Rule 50(b), or, in the alternative, a new trial. This Court reviews the denial of a motion for judgment as a matter of law *de novo*, and the denial of a motion for a new trial for an abuse of discretion. *McCurdy v. Montgomery County*, 240 F.3d 512, 517 (6th Cir. 2001) (internal citations omitted). We apply the same standard as the district court. *See Gray v. Toshiba America Consumer Prods. Inc.*, 263 F.3d 595, 598 (6th Cir. 2001).

Rule 50 provides the following standard for granting judgment as a matter of law:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense

---

[1] This Court has appellate jurisdiction over appeals from final judgments of the district court under 28 U.S.C. § 1291.

that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  In addition, when a party makes a renewed motion after a verdict has been returned, the court may: "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law[.]" Fed. R. Civ. P. 50(b)(1).  The inquiry for resolving a Rule 50 motion for judgment as a matter of law is the same as the inquiry for resolving a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 794 (6th Cir. 2004) (en banc) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  We review the evidence in the record in the light most favorable to the nonmoving party and determine whether there was a genuine issue of material fact for the jury.  *Id.* (citing *Gray*, 263 F.3d at 598).

## B.    DISCUSSION

Shelby State argues that it is entitled to judgment as a matter of law on Cox's retaliation claim because there was no legally sufficient evidentiary basis for the jury to have found for Cox on a claim of retaliatory discharge.[2]  Defendants argue that Cox failed to demonstrate by a preponderance of the evidence that a causal connection existed between the protected activity and

---

[2] Section 704(a) of Title VII, the retaliation clause, states in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (2006).  This section prohibits an employer from retaliating against an employee who has "opposed" any practice by the employer made unlawful under Title VII.

the adverse employment action. Specifically, they allege that Cox failed to show that the Defendants' proffered reason was not the true reason for the employment action, but rather a mere pretext for discrimination. The district court rejected Shelby State's arguments holding that,

> [t]he Court is not persuaded by Defendants' arguments and concludes that Plaintiff [Cox] presented sufficient evidence for a reasonable jury to have found that the Defendants unlawfully retaliated against Plaintiff [Cox], thus violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* Because the evidence on the record as a whole is sufficient, the Court denies Defendants' renewed motion for judgment as a matter of law.

(J.A. 544) (D. Ct. Order Denying Defendants' Renewed Motion for Judgment as a Matter of Law). We agree with the district court.

In *Reeves*, the Supreme Court granted certiorari to resolve a conflict among the circuits as to whether a plaintiff's prima facie case of discrimination combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. The *Reeves* Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148. The Court also clarified that when the factfinder rejects the employer's legitimate, nondiscriminatory reason for its action, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147 (emphasis in original). Specifically, the Court stated,

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*Id.* (internal quotation marks and citation omitted) (emphasis in original).

In our Circuit, the requirements for establishing a *prima facie* case under Title VII's opposition clause, § 704(a), differ from those required for a generic claim of racial discrimination in employment. To succeed on a claim under § 704(a), an employee need only demonstrate that he was fired in retaliation for opposing what he reasonably believed to be a discriminatory practice. *See Cox I*, 48 Fed.Appx at 506. Specifically, to establish a claim under Title VII's opposition clause, a plaintiff must meet a slightly modified *McDonnell Douglas* standard by showing that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendants; (3) defendants thereafter took an adverse employment action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

In the instant case, Cox's prima facie case was established in *Cox I*. Specifically, the *Cox I* panel concluded,

> Cox met [the *prima facie*] elements when he alleged he had been discharged for his opposition to what were, in his view, Shelby State's racially discriminatory practices. The causal connection between opposition and discharge was established by Cox's allegation that the College's affirmative action officer testified against him at his discharge hearing about his prior EEOC filings regarding the College's allegedly discriminatory practices.

*Cox I*, 48 Fed. Appx. at 506.

Given the legal principles articulated above and this Court's finding in *Cox I* regarding Cox's *prima facie* case, a *de novo* review of the record convinces us that the district court correctly denied Shelby State's post-trial motion for judgment as a matter of law. Contrary to Shelby State's arguments, Cox did *not* fail to establish any causal connection between his protected activity and his termination by either direct or circumstantial evidence. Instead, the record is replete with evidence establishing this connection.

First, there is Vice President Jennings's initial memorandum to Cox noting his "long history of filing racial and gender discrimination lawsuits," which immediately preceded the decision to remove Cox from the classroom for the academic year. (J.A. 938.) Second, Cox pointed to the inclusion of Shelby State's affirmative action officer in the formal termination proceedings and her testimony regarding his numerous discrimination complaints. Third, there was TBR Attorney Springfield's testimony at trial, which also confirmed that Cox's protected discrimination complaints were submitted to the final termination hearing committee.

Therefore, Defendants' argument that they provided "uncontradicted proof at trial, from all members of the formal termination committee, including the lone member of the committee who voted against termination," that evidence of Cox's discrimination complaints was introduced solely to demonstrate Cox's lack of collegiality and unprofessional conduct toward his colleagues and the administration fails. The jury's rejection of this excuse was reasonable in light of the other evidence in the record indicating that the administration took steps toward terminating Cox, at least in part, in retaliation for his numerous discrimination complaints. In addition, testimony of the committee members does not constitute uncontradicted proof as Shelby State contends. The credibility of the eight committee members, all Shelby State employees, who testified that the presentation of the protected discrimination filings did not affect their judgment to recommend termination of Cox, was not uncontradicted proof, but instead an issue for the jury to decide. The jury decided against Shelby State. This decision was entirely reasonable in light of the evidence in the record.

We must affirm the jury verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party," and we draw all reasonable inferences in favor of the prevailing party, and we do not make any credibility determinations or weigh the evidence.

Fed. R. Civ. P. 50(a). In addition, "we 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *White*, 364 F.3d at 794-95 (quoting *Reeves*, 530 U.S. at 151). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* at 795 (internal quotation marks and citation omitted). Thus, under our standard of review, the jury is not required to believe that Shelby State submitted evidence of Cox's discrimination complaints to the formal tenure committee or took the initial adverse action of removing him from the classroom because of his allegedly unprofessional conduct and lack of civility. The jury is also not required to believe the testimony of the eight Shelby State employees on the termination committee who testified that their decision to recommend termination was not based on the protected complaints they were provided. Therefore, we disregard this favorable evidence for Shelby State and without that evidence, Shelby State cannot establish they are entitled to judgment as a matter of law.

The inescapable fact in this case is that Cox's complaints were used in some manner during every adverse employment action Cox suffered. It is entirely possible that a reasonable jury could have found Shelby State's explanation to lack credibility and thus reject it. That determination cannot be reversed on appeal based upon the record before us. Weighing credibility and making factual determinations is the province of the jury. We cannot substitute their judgment with that of our own. Therefore, based upon our *de novo* review of the record we affirm the district court's decision to deny Shelby State's renewed motion for judgment as a matter law. We agree with the district court that Cox presented sufficient evidence for a reasonable jury to find that Shelby State unlawfully retaliated against him in violation of Title VII of the Civil Rights Act of 1964.

**II.**	**THE DISTRICT COURT DID NOT ERR IN AWARDING COX FRONT PAY, BUT THE COURT DID ERR IN ITS CALCULATION OF THE AMOUNT TO BE AWARDED.**

**A.**	**STANDARD OF REVIEW**

We "generally award front pay when reinstatement is inappropriate or infeasible." *Suggs v. ServiceMaster Educ. Food Mgmt*, 72 F.3d 1228, 1234 (6th Cir. 1996) (citation omitted). Therefore, "the remedies of reinstatement and front pay are alternative, rather than cumulative. Determination of when to award front pay is within the discretion of the trial court, . . . such awards are reviewed under the abuse of discretion standard." *Id.* (citations omitted). In addition, "Title VII claimants have a duty to mitigate an award of front pay." *Id.* (citation omitted).

Generally, when calculating front pay, the district court must consider the following factors: (1) the employee's future in the position from which he was terminated; (2) his work and life expectancy; (3) his obligation to mitigate damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) other factors that are pertinent in prospective damage awards. *Id.* (citation and internal quotation marks omitted). When a district court determines that front pay is appropriate because reinstatement is inappropriate or infeasible, the court must make its award of front pay reasonably specific as to duration and amount, and the amount of a front pay award must be reduced to present value. *Id.* at 1235; *see also Carter v. Sedgwick County*, 929 F.2d 1501, 1505 (10th Cir.1991) ("[A] front pay award must specify an ending date and must take into account any amount that the plaintiff could earn using reasonable efforts.") (citation omitted). This Court affirms awards of front pay where they are warranted and where the finder of fact has considered the factors necessary to calculate the amount of the award.

*Suggs*, 72 F.3d at 1235.

## B.    DISCUSSION

In the instant case, the district court denied Cox's motion for reinstatement as an instructor at Shelby State, but in the alternative, granted his motion for front pay. The district court did not abuse its discretion. First, an award of front pay is warranted in this case. We agree with the district court's conclusion that "because the Court has ruled that Plaintiff was terminated in violation of Title VII and that, absent such wrongful termination, Plaintiff would likely have remained employed by Defendant until retirement, an award of front pay is appropriate to compensate the Plaintiff for the future loss." (J.A. 48) (D. Ct. Order Denying Plaintiff's Motion for Reinstatement; Awarding Front Pay; and Denying Plaintiff's Motion for Prejudgment and Post-Judgment Interest).

Second, the district court properly considered and weighed the *Suggs* factors. For example, the district court considered Cox's future in the position from which he was terminated and given the acrimonious relationship between the parties in this case, the court did not err in denying Cox's motion for reinstatement. In addition, the district court properly found that Cox attempted to mitigate his damages by seeking alternative employment. Specifically, the court stated, "[a]lthough he was unable to find comparable employment, his extensive efforts satisfy his duty to mitigate." *Id.* The district court credited Cox's testimony that he had tried to apply for several teaching positions in various states to no avail. Moreover, Shelby State did not contest the issue of mitigation below and thus should not be allowed to do so now. The reasonableness of a Title VII claimant's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983).

The issues of Cox's work and life expectancy and the availability of comparable employment

opportunities weigh in Cox's favor. Specifically, in light of Cox's long-standing employment relationship with Shelby State, approximately 25 years, his eligibility to work until at least 70, the minimal physical demands of teaching, and the unlikelihood of a 64 year-old professor being hired by another college, there is no reason to assume that Cox would not have carried out his teaching position at Shelby State until age 70. Thus, Shelby State is incorrect that the district court erroneously determined that Cox "would have continued teaching until at least 70[,]" Appellants' Br. at 48, and the district court did not err in establishing 70 years old as the end date for calculating front pay.

The district court did err, however, in awarding Cox front pay in the amount of, $205,453.10, because that amount was based on the court's determination that Cox was 62 years old at the time of its decision when he was actually 64 years old. This means the district court should have based the front pay amount awarded on a six year period versus an eight year period.

Finally, the amount awarded by the district court, $205,453.10, was only excessive to the extent it was based on Cox's incorrect age. Otherwise, the district court properly discounted his expected salary by the present value of total salary due to him. Thus, we find that the district court did not abuse its discretion in awarding front pay to Cox. We do find, however, that the district clearly erred in its calculation of the amount of front pay to award. Therefore, we reverse and remand for recalculation of the front pay amount based on Cox's correct age at the time of the district court's decision.

## III. THE DISTRICT COURT DID NOT ERR IN CALCULATING THE AMOUNT OF ATTORNEY'S FEES AWARDED TO COX.

### A. STANDARD OF REVIEW

Under Title VII, a district court has discretion to award a prevailing party "a reasonable

attorney's fee." 42 U.S.C. § 2000e-5(k). We review for an abuse of discretion a district court's determination regarding the amount of attorney's fees awarded under Title VII. *See White*, 364 F.3d at 804 (citation omitted). "This deference, 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Id.* (citation omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The district court found Cox to be a prevailing party for purposes of the fee-shifting statute.

**B.      DISCUSSION**

Defendants argue that the trial court erroneously awarded Cox attorney's fees for 308 hours of legal representation during the termination proceedings. The district court considered Defendants's argument and rejected it. Specifically, the court concluded,

> [t]he Court finds that the majority of Ms. Lee's, [Cox's attorney], work in preparing for Plaintiff's termination hearing involved the same facts, documents, exhibits, and most likely the same witnesses as were involved in this lawsuit, and thus these hours are properly included in the fee award. Particularly in such a document intensive case, Ms. Lee's review of documents for the termination hearing may properly also be considered preparation for the lawsuit. Similarly, her preparation of witnesses or review of exhibits for the termination hearing may easily have been transferred to the lawsuit. [H]ad Ms. Lee not expended those hours in preparing for the termination hearing, she likely would have had to expend them to prepare for the lawsuit, as review of the same materials would have been required. Accordingly, the Court disagrees with Defendants' objection to the inclusion of the 308 hours prior to August 3, 1999.

(J.A. 40-41) (D. Ct. Order Granting in Part Plaintiff's Motion for Award of Attorney Fees and Costs). The facts in the case support the district court's conclusion. All of the documents used at trial by both Cox and Shelby State were produced from the administrative hearing. No depositions were taken in preparation for the trial of the case other than the deposition of Dr. Jennings, which was read at trial. The preparation for and cross-examination of the witnesses, the review of the

documents introduced at the hearing, and the exclusive use of those documents during the trial was useful and of the type ordinarily necessary to advance the racial discrimination and retaliation claims of Cox.

Title VII allows a reasonable attorney's fee where warranted, which it is in this case even though 308 hours of the fee were earned during the formal termination hearing. An analogous fee shifting provision is, 42 U.S.C. § 1988(b), which allows district courts, in their discretion, to "allow the prevailing party . . . a reasonable attorney's fee" in actions brought pursuant to the provisions enumerated in the statue. Section 1988 does not limit fee awards to work performed after the complaint is filed, but allows recovery of fees for time spent beforehand investigating the facts and researching the viability of potential legal claims. *See Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 250 (1985) (Brennan, J., concurring in part and dissenting in part) ("There is certainly nothing in § 1988 that limits fee awards to work performed after the complaint is filed in court."); *see also North Carolina Dep't of Transp. v. Crest Street Cmty Council*, 479 U.S. 6, 15 (1986) ("even if the prior proceeding is not a proceeding to enforce one of the § 1988 civil rights laws, the discrete portion of the work product from the administrative proceeding that was both useful and of a type ordinarily necessary to advance the civil rights litigation . . . can be part of the attorney's fee awarded under § 1988") (internal quotation marks and citations omitted). Although Cox prevailed on a Title VII claim in the instant case, a provision not covered by § 1988, this reasoning persuades us that the district court correctly included the 308 hours expended on the state termination proceeding in the overall attorney's fee award.

Ultimately, the district court performed a thorough and extensive review of the facts in this case to determine whether Cox's request for attorney's fees based on 839 hours of work on the case–

308 hours of which occurred during document review for the formal state termination hearing– was proper. The district court utilized appropriate methods in calculating the fees, examined the accurateness of the hours claimed, and considered whether the attorney fee award should reflect all 839 hours when Cox did not succeed on all of his claims. Therefore, we find that the district court did not err in its calculation of the attorney's fees awarded to Cox and thus did not abuse its discretion. We affirm the award of attorney's fees to Cox, including the 308 hours spent in preparation for the state formal tenure termination hearing. This preparation was ultimately used in the civil rights action upon which Cox prevailed.

## IV.  THE DISTRICT COURT DID NOT ERR IN DENYING COX'S MOTION FOR BACK PAY.

### A.  STANDARD OF REVIEW

We review back pay awards for an abuse of discretion. *Suggs*, 72 F.3d at 1233 (citation omitted). The goal of Title VII is to "make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)); *see also Rasimas,* 714 F.3d at 626 ("A backpay award should make the claimant whole, that is, to place him in the position he would have been in but for discrimination."). A back pay award is presumptively favored in employment discrimination cases. *See Suggs*, 72 F.3d at 1233. In accordance with goal of making a claimant whole, "the general rule is to award back pay through the date of judgment." *Id.* (citation omitted). In addition, "the back pay award should completely redress the economic injury the plaintiff has suffered as a result of discrimination." *Id.* Therefore, "it should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well sick leave, vacation pay, pension benefits and other fringe benefits he would have received but for the discrimination." *Id.*

**B. DISCUSSION**

On cross-appeal, Cox argues that the district court erroneously denied him back pay. Cox is incorrect. The district court did not err and thus did not abuse its discretion in finding that Cox's back pay award was lumped into the compensatory damages amount awarded by the jury. The district court charged the jury with the task of awarding Cox's compensatory damages, which normally include back pay. Therefore, based on our review of the record, we affirm the district court's denial of back pay, finding instead that back pay was awarded to Cox in the jury's overall award of compensatory damages.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court in its entirety, but **REMAND** the issue of front pay to the district court to recalculate the amount of front pay to be awarded based on Cox's correct age at the time of the district court's decision.