**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0717n.06
Filed: November 20, 2008

**No. 06-4642**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| BILL EVES, doing business as Specialized Systems, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF |
| AMERICAN CLEARINGHOUSE INC, et al, | ) ) | OHIO |
| Defendant-Appellee. | ) ) ) | |

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

**PER CURIAM**. Appellant Bill Eves ("Eves") sold mapping systems and other products as a representative for Appellee American Clearinghouse, Inc. ("ACH"), for a period beginning in 1997 and ending in August 2001. Eves and ACH had a profit-splitting agreement whereby Eves received one-third of the profits, ACH received one-third of the profits, and ACH paid marketing expenses with the remaining one-third of the profits. Subsequent to the termination of the relationship between Eves and ACH, Eves brought suit against ACH for unpaid profits under theories of quantum meruit, on account, fraud, and breach of contract.

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

The parties consented to a bench trial by Magistrate Judge Mark R. Abel, who found that Eves could only recover for breach of contract. The magistrate judge awarded Eves damages in the amount of $22,965.53, the difference between what ACH had paid Eves ($160,209.47), and what ACH should have paid Eves under their agreement ($183,175.00). Eves appeals the award of damages, contending that the magistrate judge abused his discretion by ignoring evidence that Eves offered regarding damages. For the following reasons, we AFFIRM.

## BACKGROUND

Throughout the period from 1997 to August 2001, when Eves was making sales on behalf of ACH, ACH provided Eves with monthly reports that detailed the payments collected from customers, the costs that ACH incurred with respect to each sale, and the profit made from each sale. Eves, on the other hand, did not have an accounting system. Eves relied on a check service to track his expenses and income, and he kept receipts for expenses in an envelope.

At trial, Eves did not advance any records of sales that he made on behalf of ACH. *Eves v. Am. Clearinghouse, Inc.*, No. 2:02-CV-665, op. at 12 (S.D. Ohio Nov. 20, 2006). As a result, the magistrate judge was unable "to determine the accuracy of [Eves's] recollections or the dollar amount of sales [Eves] made to individual customers." *Id.* In contrast, the magistrate judge found that there was "no reason to believe that the monthly reconciliation statements and other reports ACH provided to Eves do not capture all of his sales," because "if Eves believed he was not getting credit for a sale he promptly brought that sale to the attention of ACH." *Id.* Accordingly, the magistrate judge concluded that ACH had paid Eves his share of the profits on income received up until May 29, 2001, the date of the last check that ACH sent to Eves.

While the magistrate judge indicated that Eves did not advance any evidence as to what income ACH had received from Eves's sales subsequent to that date, the magistrate judge noted that "it seems likely that some sales from [the period between May 29, 2001, and August 2001,] were not both billed and paid before the end of August 2001." *Id.* at 14. Accordingly, the magistrate judge determined that Eves was entitled to some amount of damages based on income received by ACH, from which ACH did not pay Eves his one-third share of the profits.

At trial, Eves also did not offer any evidence of unpaid expenses. *Id.* Eves testified that ACH typically requested receipts prior to reimbursing Eves for expenses, and Eves did not present any receipts at trial for which he claimed that ACH had not yet reimbursed him. Accordingly, the magistrate judge found that ACH had reimbursed Eves for all of the expenses that he had incurred in connection with his sales activities for ACH.

Thus, the challenge that the magistrate judge faced was to determine Eves's share of the profits on income received from May 29, 2001, through August 2001, when Eves did not present any evidence of sales on which ACH had not paid Eves his share of the profits. The magistrate judge highlighted that Eves "had an opportunity to take discovery from ACH, so that he could attempt to prove those sales for which commissions were still owing. He offered no such evidence at trial." *Id.* at 15. In addition, Eves "did not have an accountant look at ACH's records and attempt to calculate its profits from the sales." *Id.* at 11-12. ACH provided documentary evidence showing that it had paid Eves $160,209.47 over the life of their relationship and ACH's accountant testified that ACH should have paid Eves a total of $183,175.00 over the life of the relationship. Based on this evidence, the magistrate judge awarded Eves $22,965.53.

## DISCUSSION

## A. Standard of Review

When damages are an appropriate remedy, "[q]uestions raised concerning damages are essentially questions of fact." *Duty v. U.S. Dep't of Interior*, 735 F.2d 1012, 1014 (6th Cir. 1984) (citations omitted). Accordingly, in a non-jury action, the trial judge's "determination of damages is reviewable only for abuse of discretion, subject to being set aside as a finding of fact under the 'clearly erroneous' standard of Rule 52(a) of the Federal Rules of Civil Procedure." *Smith v. Manausa*, 535 F.2d 353, 354 (6th Cir. 1976) (citing *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 424-25 (1975)). Clear error exists "only when the reviewing court is left with the definite, firm conviction that a mistake has been made." *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). The appellant bears the burden of proving the existence of a mistake, *Godley v. Ky. Res. Corp.*, 640 F.2d 831, 834 (6th Cir. 1981), and cannot satisfy the burden merely by showing that there is conflicting evidence, *Walling v. Gen. Indus. Corp.*, 330 U.S. 545, 549 (1947), or by asserting that some witnesses were inherently more or less credible than determined by the trial judge. *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1232 (6th Cir. 1996) (citing *Anderson*, 470 U.S. at 573-74). If there are two plausible ways to view the evidence presented, the trial judge's choice cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949).

## B. Analysis

Eves advances three arguments to show that the magistrate judge abused his discretion when he awarded Eves $22,965.53 in damages. First, Eves argues that the magistrate judge abused his discretion because a co-owner of ACH, Renee Hogg, a.k.a. Renee Jones ("Jones"), testified that at least $4,007.36 of the $160,209.47 that ACH had paid to Eves was intended to reimburse Eves for

expenses, rather than to constitute a portion of Eves's one-third share of the profits. Jones did identify certain payments, totaling $4,007.36, that were intended to reimburse Eves for expenses, but Jones only identified those payments subsequent to testifying that she could not recall which payments were for commissions and which were for expenses. *See* Trial Tr. 711: 10-24, J.A. 263.

The magistrate judge apparently determined that Jones's testimony was not credible, or at least not compelling, as to which payments were for commissions and which were for expenses. Both the magistrate judge's and Eves's characterizations of Jones's testimony are plausible; however, Eves cannot show clear error simply by asking this Court to reassess the credibility of Jones's statements. Accordingly, the Court rejects Eves's argument that his damage award should be increased by $4,007.36.

Second, and in the alternative, Eves argues that $29,606.21 of the total amount that ACH paid to Eves was reimbursement for expenses, because, as of May 2000, ACH had made payments to Eves in the amount of $29,606.21, and the business relationship between ACH and Eves did not show a gross profit until June 2000. Therefore, according to Eves, the $29,606.21 that he received from ACH could not have been part of his share of the profits, and must have been reimbursement for expenses. However, Jones testified that ACH made payments to Eves before ACH turned a profit on Eves's sales because Eves represented to ACH that he needed the money in order to continue his sales efforts. *See* Trial Tr. 443, J.A. 244. Based on this testimony, the magistrate judge's apparent conclusion that $29,606.21 of the amount paid to Eves was not for expenses is plausible. Accordingly, Eves has not shown clear error, and the Court rejects his argument that the damage award should be increased by $29,606.21.

Third, and finally, Eves argues that the magistrate judge abused his discretion when he relied on the testimony of ACH's accountant, Thomas P. Giusti, to determine the total amount of the profits that ACH should have paid to Eves over the life of the parties' relationship. Subsequent to Eves's filing of this lawsuit, ACH hired Giusti to determine any amounts that ACH owed to Eves under their agreement. According to Giusti, when he reviewed ACH's records, he discovered that ACH had been providing erroneous monthly reports to Eves, because ACH had failed to subtract from the profit certain costs of sales, including costs such as payroll taxes, overtime, sick and vacation pay, and the cost of office space. Giusti testified that generally accepted accounting principles allowed ACH to use the corrected figures to determine the amount of the profits that ACH should have paid to Eves over the life of the parties' relationship. Giusti determined that ACH should have paid Eves $183,175.00.

According to Eves, the magistrate judge should have awarded damages based on the original accounting methodology that ACH had used to provide monthly reports to Eves, because the new profit calculations made by Giusti were the result of an impermissible change in an accounting principle. Under this theory, the magistrate judge should have awarded Eves a total of $184,326.84 in damages because, according to Eves, the numbers that ACH initially provided to Eves indicate that his share of the profits over the life of his relationship with ACH was $344,536.31.

Like Eves's other two arguments, this final argument amounts to an attack on the magistrate judge's credibility determinations. In relying on Giusti's calculations of the profits owed to Eves, the magistrate judge rejected the testimony of Steedman, Eves's expert witness, suggesting that changes were made by ACH, and that they were prohibited under generally recognized accounting principles. Eves has not shown that it was clear error for the magistrate judge to credit ACH's expert

witness testimony over the testimony of Eves's expert witness.  Thus, this Court rejects Eves's argument that he is entitled to an additional $184,326.84 in damages.

AFFIRMED.